**In re John W. KARR, Respondent.**

**A Member of the Bar of the District
of Columbia Court of Appeals.**

Nos. 94–BG–992, 95–BG–562.

District of Columbia Court of Appeals.

Argued Nov. 20, 1996.
Decided Oct. 15, 1998.

Ralph J. Temple, Washington, DC, for respondent.

Wallace E. Shipp, Jr., Deputy Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before WAGNER, Chief Judge, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

We are presented with the recommendations of the Board on Professional Responsibility in two consolidated cases against respondent, John W. Karr. In the first case, referred to as Karr I, the Board on Professional Responsibility adopted the Hearing Committee's findings in four joined disciplinary actions, involving four different clients, that Karr violated various disciplinary rules: DR 6–101(A)(3) and Rule 1.3(c) (client neglect and delay in representing Coopers and Stroup); DR 9–103(B)(4) (failure to promptly return client files to Cooper); Rules 1.2(c) and 1.4(a) (failure to consult with and keep Stroup reasonably informed); and two violations of Rule 8.4(d) (failure to cooperate with Bar Counsel in the Benson and Walters pro-

ceedings). The Board recommends that Karr be suspended for thirty days, rejecting the recommendation of the Hearing Committee that the suspension be stayed for one year with a practice monitor.[1] We conclude that Karr committed five of the seven violations of the professional rules found by the Board. Thus, we remand the disciplinary proceedings that comprise Karr I to the Board for reconsideration of the proposed thirty-day suspension sanction in light of our conclusion.

The second case, Karr II, involves DR 2–101(A), (B) and (C), DR 2–10(C), and Rules 7.5(a) and (d), which prohibit the use of a non-partner's name in a law firm name and letterhead. The Board decided that Karr violated these disciplinary rules by including the name "McLain" in his firm's name and letterhead when William G. McLain was not Karr's "full-fledged" partner. The Board rejected the Hearing Committee's recommendation that there be no sanction beyond that imposed in Karr I, and instead recommends public censure for this violation. We disagree that Bar Counsel has proven, by clear and convincing evidence, that Karr's use of McLain's name violated the rules and therefore do not adopt the Board's recommendation of public censure.

### I.

At the outset, we note that in reviewing disciplinary cases we accept the findings of fact made by the Board on Professional Responsibility unless they are unsupported by substantial evidence of record. *See* D.C. Bar R. XI, § 9(g)(1) (1995); *In re McLain*, 671 A.2d 951, 953 (D.C.1996) (citing D.C. Bar R. XI, § 9(g)(1) (other citations omitted)). Similarly, the Board defers to the Hearing Committee's findings of fact. *See* D.C. Bar R. XI, § 4(e)(4) and (7); *In re Temple*, 629 A.2d 1203, 1208 (D.C.1993). We "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct

---

1. Bar Counsel initially agreed with the Hearing Committee's recommendation. Before the court, Bar Counsel supports the Board's recommended sanction. Two members of the Board dissented from the Board recommendation of a thirty-day suspension, adopting instead the Hearing Committee's view that the suspension be stayed conditioned on Karr's successful completion of a one-year probationary period with a practice monitor.

or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1) (1995); *see McLain, supra*, 671 A.2d at 954 (citing D.C. Bar R. XI, § 9(g)(1)). Further, it is Bar Counsel's burden to establish the evidence of a charge of a disciplinary violation by clear and convincing evidence. *See* Board Rules 11.4; *In re Benjamin*, 698 A.2d 434, 439 (D.C.1997).

Karr raises numerous issues on exception to the Report of the Board on Professional Responsibility. Due to the multifarious facts involved in the several disciplinary matters, we will discuss the charged violations in the context of the facts of each disciplinary case.

## II.

### Karr I—The Client-related Violations

### No. 94–BG–992

A. COOPER CASE

*Police Matter.*

Karr successfully represented Robert F. Cooper, Jr. in his efforts to be reinstated into the Metropolitan Police Department. Shortly after the court ordered that Cooper should be reinstated, Cooper tested positive for marijuana during a reinstatement physical examination. With Karr still representing him, Cooper testified before a police adverse action panel that he had not smoked marijuana. After the hearing, however, Cooper informed Karr that he had, in fact, smoked marijuana. Following Cooper's disclosure, Karr did not file proposed findings of fact and conclusions of law with the panel. The panel found Cooper guilty of smoking marijuana and Cooper was dismissed from the Police Department. Karr subsequently filed an appeal before the Office of Employee Appeals requesting *de novo* review.

Cooper testified before the Hearing Committee that he "was told something" by Karr and that he recalled making an attempt to discuss the tactical decision not to file a post-hearing submission, but that he was never given "anything substantive that made sense to him." Karr testified that he had informed

his client of his tactical decision not to file a post-hearing submission.[2]

Karr contends that the Board erroneously concluded that he neglected his client's interests, in violation of DR 6–101(A)(3) of the Code of Professional Responsibility, by not filing proposed findings of fact and conclusions of law and by failing to communicate with his client. Karr testified before the Hearing Committee that his failure to file was not a violation of the rule because his decision not to file proposed findings of fact was within the wide range of reasonable professional judgment and that, in this case, because Cooper had lied to the police panel, any truthful proposed findings of fact that Karr could have filed would have been detrimental to his client's interest. The Hearing Committee and the Board did not credit Karr's testimony because Karr had sought and received an extension of time to file proposed findings. The Board also disagreed with Karr's strategy of not filing a post-hearing brief for two reasons. First, it found that a lawyer's refraining from closing argument out of fear of flagging his client's perjury to the fact-finder constituted abandonment of a client and that such abandonment was unethical. Second, the Board disagreed with Karr's trial strategy arguing that if arguments of law could ethically be presented on appeal, as they were, there was no reason not to present them in the first instance to the police panel.[3]

 Based on the record, we conclude that Bar Counsel did not meet his burden of proof to establish, by clear and convincing evidence, that Karr's conduct demonstrates "neglect, *i.e.*, a conscious disregard for the responsibility he owed to [Cooper] and a consistent failure to carry out his obligations to [him]." *In re Foster*, 581 A.2d 389, 391 (D.C.1990). It was not clearly established that Karr's failure to file proposed findings of fact was caused by neglect, rather than by consideration of an ethical dilemma posed by Cooper's perjury before the police panel.

2. The Hearing Committee disregarded Karr's testimony on this point because the discussion had not been memorialized in writing.

3. Karr argues, and the record supports, that only proposed findings of fact had been requested by the panel.

*See* Rule 1.2(e) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent."); Rule 1.6(a) ("Except when permitted under paragraph (c) or (d), a lawyer shall not knowingly: 1) Reveal a confidence or secret of the lawyer's client.").[4] Karr's subsequent filing of an appeal before the Office of Employee Appeals attests to the fact that he continued efforts on Cooper's behalf and did not abandon him. Although we do not equate "neglect" sufficient to constitute a disciplinary violation with constitutional ineffectiveness, we are similarly mindful in this context not to "second guess" the tactical decisions of counsel. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *In re Thorup,* 432 A.2d 1221, 1226 (D.C.1981). Further, although Cooper was clearly frustrated in his attempts to communicate with Karr, Cooper's testimony does not completely contradict Karr's testimony that there was some communication concerning the tactical decision post-hearing during what was admittedly a tense period in the attorney-client relationship. Accordingly, we disagree with the Board's determination that Karr's "conduct constitutes a straight-forward example of neglect of a client's interests, in violation of DR 6–101(A)(3)."

*Real Estate Files.*

Cooper had also retained Karr to represent him in litigation involving a suit to partition real estate. After Cooper retained new counsel in the matter, on July 10, 1989, the new counsel informed Karr that he had been retained by Cooper to represent him in both the police and the real estate matters.[5] Cooper's new counsel also wrote Karr the next day, July 11, 1989, requesting Karr to send all files relating to both Cooper matters, and, when he did not receive the files, Cooper's new counsel made numerous attempts to contact Karr, to no avail. Karr testified that he knew he had been fired by Cooper, conceded that he had promised the files to new counsel, and stated that providing them to Cooper two months later was "excessive," and that he was "shocked" at the lapse of time.

■ The Hearing Committee found there was clear and convincing evidence that Karr failed to return Cooper's files promptly when he was requested to do so, thereby violating DR 9–103(B)(4). The Board agrees. Karr argues that the Board failed to consider his testimony that, pursuant to Karr's invitation, Cooper came to his office and obtained the files that had been requested by his new attorney. Citing *In re Foster,* 581 A.2d 389 (D.C.1990), Karr argues that once Cooper picked up the files, Karr no longer had an obligation to provide them a second time to new counsel, absent a showing that all relevant files had not been provided to Cooper.

Karr's reliance on *Foster* is misplaced. In *Foster,* the court found that the record was insufficient to sustain a finding, by clear and convincing evidence, that respondent did not mail the client's files when he said he did, eight days after his client's telephone message requesting them. The evidence showed only that the client had not received the files. Here, on the other hand, the record clearly reflects that Karr did not timely respond to Cooper or his new counsel. Although Karr argues that he made the files available to Cooper and that Cooper collected some of the documents, Karr also conceded that the time was excessive from the time the files were first requested on July 11, 1989, to the time Karr actually turned over the files to Cooper's new attorney on September 25, 1989. The facts clearly show that the request for the files was reasonable and that

---

4. Comment 7 to Rule 1.2 provides:
 When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is not permitted to reveal the client's wrongdoing, except where permitted by Rule 1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required.

5. Karr continued to represent Cooper for five months after the police panel's determination. However, after Cooper was fired by the Police Department, he discharged Karr and retained new counsel, and filed a complaint with Bar Counsel against Karr.

Cooper's new counsel was diligent in his attempts to obtain them. Thus, Karr's failure to return the files promptly, pursuant to his client's request, was a violation of DR 9–103(B)(4). *See In re Landesberg,* 518 A.2d 96, 102 (D.C.1986).

## B. STROUP CASE

*Late Filing of the Brief.*

Keith Stroup, an attorney, retained Karr to represent him in defending a wage garnishment proceeding for child support. In connection with this matter, Karr requested additional time to brief several issues and assemble payments by Stroup. Karr was granted an extension and was ordered to file pre-hearing briefs no later than January 7, 1991, with a hearing on the merits to be held on February 11, 1991. Stroup testified that he and Karr had agreed on a division of work in preparation for the February hearing and that he specifically requested an opportunity to review the briefs prior to their filing. Karr filed the papers on February 8, 1991, thirty days late, three days before the scheduled hearing, and without moving for an extension of time. Karr concedes that he did not provide a copy of the brief to Stroup which would have allowed him to review the brief before it was filed with the court.

Karr testified that the brief was filed late because he attempted to dissuade his client from making arguments intended solely to delay the proceeding and for other improper purposes. He also testified that the late brief was nevertheless accepted by the court and achieved the maximum possible result for Stroup.

The Hearing Committee concluded that Karr violated Rule 1.3(c) (failure to act with reasonable promptness in representing client) because he failed to timely file the brief or to request a continuance, and Rules 1.2(a) (failure to consult with client as to means by which objectives of representation are to be pursued) and 1.4(a) (failure to keep his client reasonably informed about the sta-

tus of a matter and failure to comply with reasonable request for information), as he did not consult with his client and failed to provide his client with a draft of the brief as had been repeatedly requested by his client. The Board agrees with the determinations of the Hearing Committee.[6]

■ Based on the evidence of record, we conclude that even though Karr failed to move for an extension of time to file the brief and was late in filing the brief, Karr's actions do not constitute neglect in violation of the disciplinary rules. Karr's actions do not fall within the definition of "neglect" set forth in *In re Reback,* 487 A.2d 235 (D.C.1985) (per curiam), *aff'd. in relevant part,* 513 A.2d 226, 228 (D.C.1986) (en banc). Under *Reback,* a finding of neglect involves more than a single act or omission and "cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith." *Id.* at 238. We disagree with the Hearing Committee and the Board's conclusion that Karr's failure to timely file the brief was neither inadvertent nor the result of an error of judgment made in good faith. The evidence in the record supports Karr's contention that the delay in filing the brief was the result of Karr's struggle with his client's insistence on delaying the proceedings as much as possible and on making improper arguments. Although Karr omitted requesting an extension of time to file the brief, the record does not clearly and convincingly establish client neglect under *Reback* in light of the fact that Karr did, in fact, file a brief, which was accepted by the court. Thus, we disagree with the Board's conclusion that Karr violated Rule 1.3(a).

*Failure to provide client with copy of brief.*

■ Karr contests the Board's determination that he violated Rules 1.2(a) and 1.4(a) for his failure to provide Stroup with a draft of the brief before it was filed. Karr conceded that he should have provided Stroup with a copy of the brief before it was filed,

---

**6.** Neither the Hearing Committee nor the Board determined that there was clear and convincing evidence that Karr committed the other violations of which he was charged in connection with his representation of Stroup:

Rule 1.1 (failure to provide competent representation), Rule 1.3(a) (failure to represent his client zealously and diligently), and Rules 1.3(b)(1) and (b)(2) (intentional failure to seek his client's lawful objectives).

but presented evidence that the substance of the brief had been discussed with Stroup by both Karr and his law clerk and that Stroup acknowledged the brief contained his main arguments and was satisfactory. We conclude there was substantial support for a finding that Karr did not comply with Rule 1.4(a) when he failed to provide a copy of the brief to his client, as requested. We disagree, however, that Karr's failure to provide a copy of the brief to his client also constitutes violation of Rule 1.2(a).[7] Nothing in the record supports that Karr did not abide by his "client's decisions concerning the objectives of representation" or failed to "consult with [his] client as to the means by which they are to be pursued." Rule 1.2(a); *cf. In re Stanton,* 470 A.2d 272, 277 (D.C. 1983) (noting that counsel's failure to assist client in entering plea "goes beyond neglect and rises to the level of conduct condemned by the disciplinary rule that prohibits intentional failures to pursue the client's objective").

## C. BENSON & WALTERS CASES

The Hearing Committee found that Karr ignored letters sent to him by Bar Counsel in connection with these disciplinary matters. In both cases, Karr finally provided the requested material to Bar Counsel. Karr concedes his disciplinary violations in these matters. We agree with the Hearing Committee and the Board that Karr violated Rule 8.4(d).

## D. SANCTION

Karr claims the Board erred in concluding, contrary to the Hearing Committee's and Bar Counsel's initial recommendation, that there were no extenuating circumstances in Karr's life at the time of the alleged violations. Specifically, the Board did not take into account that during the time of the alleged violations, Karr suffered the death of

his father, mother and sister, and went through a divorce from his wife and partner in the firm. The latter left him with the care of two children and responsibility for the firm's business without the help of his former wife and law partner. There was testimony indicating that this was a traumatic time for Karr, personally and in his law practice, and that in response to these crises Karr "drowned" himself in his work and overextended himself. Although the Board did not find any extenuating circumstances, the Board considered other factors in mitigation in reaching its recommended sanction. The Board recognized that in his thirty-five years as an attorney, Karr has earned a reputation as a highly skilled and devoted advocate of the poor. Ralph Temple, Karr's counsel in the present case, and Karr testified that they have devised a system to help Karr correct any shortcomings in his practice and to help avoid any neglect and inattention in the future similar to the charges in the present disciplinary action. Karr acknowledged his mistakes and indicated that it is unlikely they will recur.

The Board rejected Bar Counsel's and the Hearing Committee's recommendation that the suspension be stayed and that a practice monitor be appointed for one year. The Board was of the view that probation with a practice monitor was unnecessary because there was no indication that Karr's lapses were the result of "disorganization" or faulty systems. The Board considered that Karr had previously been disciplined for violations of ethical rules.[8] The past violations, in conjunction with the violations in the case at hand, convinced the Board that the sanction should exceed an informal admonition and that Karr should be suspended for thirty days. The Board seems to have determined the sanction based on cases imposing thirty-

---

7. Rule 1.2(a) provides:
 A lawyer shall abide by a client's decision concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's

decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

8. In 1977, Karr was reprimanded for failing to cooperate with Bar Counsel and in 1983, he was informally admonished by Bar Counsel for neglect.

day sanctions for similar behavior.[9] However, in addition to neglect, most of those cases involved the attorney's dishonesty, withholding of client funds or misrepresentation, all of which are absent in Karr's case. Karr was late in filing briefs and in turning documents over to new counsel, but did not engage in dishonest behavior, withhold funds or make misrepresentations to his clients. Moreover, in one of the cases in which a thirty-day suspension was imposed, *In re Stow, supra* note 9, where the attorney neglected a criminal appeal, the thirty-day suspension was stayed and the attorney was given a one-year probation and a monitor. While Karr's conduct undoubtedly caused some aggravation to his clients and the courts, there was sparse evidence presented of harm done to his clients' causes. Although at first glance, Karr's alleged violations were more numerous than Stow's, Karr never abandoned any of his clients as was the case in *Stow*. Indeed, in each case Karr followed through on his client representation until he was replaced by substitute counsel.

█ The Board's recommended sanction is based on its conclusion that Karr committed violations of six disciplinary rules when he took, or failed to take, seven different actions. We adopt the Board's determinations that Karr violated three disciplinary rules with respect to five of these incidents: violation of DR 9–103(B)(4) for Karr's failure to return Cooper's files; violation of Rule 1.4(a) for Karr's failure to file for an extension of time to file a brief and provide Stroup, as requested, with a copy of the brief prior to its filing; and two conceded violations of Rule 8.4(d) for failure to cooperate with Bar

Counsel in the Benson and Walters matters. As to the other two incidents, Karr's failure to file proposed findings of fact in the Cooper police reinstatement case and Karr's failure to timely file a brief in the Stroup child support case, we find that Bar Counsel did not meet his burden of proving the violations by clear and convincing evidence. We also have concluded that Karr's failure to provide his client with a copy of the brief does not violate Rule 1.2(a). Thus, we agree with the Board that Karr committed five violations of the professional rules; not the seven that the Board recommended. Because we defer to the Board on matters of sanction, and in light of the split of opinion on the appropriate sanction at various stages of the proceeding, see note *supra*, we remand Karr I to the Board for reconsideration of the proposed sanction in light of our conclusions.

### III.

### Karr II—The Firm Name

### No. 95–BG–562

From May 1986 to March 1993, Karr's law firm operated under a name which included the last name of William G. McLain. Initially, the letterhead showed the firm's name as "Karr, Lyons and Mclain;" after Karr's divorce from one of the firm's partner, the successor firm was named "Karr and McLain."

The Hearing Committee determined, by clear and convincing evidence, that because McLain was not a partner in Karr's firm during the 1986–1993 period, Karr had violat-

---

9. *Compare In re Dietz*, 633 A.2d 850 (D.C.1993) (thirty-day suspension imposed for neglect of divorce case, failure to return fee paid by client, and failure to abide by promise to hearing committee), *In re Stow*, 633 A.2d 782 (D.C.1993) (thirty-day suspension with stay and one year probation with a monitor for violation of DR 6–101(A)(3) for neglecting client matter by failing to handle criminal appeal), *In re Ontell*, 593 A.2d 1038 (D.C.1991) (thirty-day suspension for two instances of neglect under DR 6–101(A)(3), coupled with misrepresentations to the client), *In re Foster*, 581 A.2d 389 (D.C.1990) (thirty-day suspension for neglect under DR 6–101(A)(3), intentional failure to seek client's lawful objectives, and intentional failure to carry out contract of employment), *In re Banks*, 577 A.2d 316 (D.C.

1990) (thirty-day suspension for neglect under DR 6–101(A)(3), resulting in action becoming time-barred), *and In re Dory*, 552 A.2d 518 (D.C. 1989) (thirty-day suspension for neglect under DR 6–101(A)(3) for doing nothing in a case for a period of three years), *with In re Santana*, 583 A.2d 1011 (D.C.1990) (sixty-day suspension for neglect of two separate matters, including failure to file documents, failure to communicate with clients after receiving pre-payment, and failure to notify clients of change of address when considered with failure to return unearned fees as promised, lack of contrition and harm and aggravation caused to clients), *and In re Stanton*, 470 A.2d 281 (D.C.1983) (sixty-day suspension for neglect and for two acts of intentional failure to seek client's lawful objective).

ed DR 2–101(A), (B)(6) and (C), and DR 2–102(C) with respect to the use of McLain's name prior to January 1, 1991, and Rules 7.5(a) and (d), with respect to use of his name after that date.[10] Before the Hearing Committee evidence was presented that McLain had worked in Karr's firm as an employee from 1975 until 1986. Beginning in 1986, when McLain became a member of the bar, until 1993, his name appeared in the law firm's name. In 1991, McLain accepted a one-year teaching position at the District of Columbia School of Law and was expected to return full-time to law practice. During that time he worked for the firm on an intermittent basis and no longer received a regular salary from the firm, but his name remained as part of the firm name. Sometime in the latter half of 1992, McLain undertook a full-time teaching position with the law school and he advised Karr that his name should be removed from the firm name in compliance with ABA standards. McLain's name was

not removed from the letterhead until March 1993, triggered by Bar Counsel's investigation.

The Hearing Committee found, based upon a stipulation filed by the parties,[11] that during the time McLain's name was part of the firm name "the relationship between [Karr] and Mr. McLain was not a partnership within the contemplation of these rules." Specifically, the Hearing Committee noted that there was no partnership agreement, McLain had no ownership interest in the firm and exercised no management or decision-making authority. The Hearing Committee found that McLain received a salary and bonuses when profits were available, but did not share in the firm's losses. The Hearing Committee also found that McLain's sworn testimony in two previous matters that he saw himself as a salaried employee, and not a partner, destroyed the mutuality of intent to form a partnership required by law. *See*

**10.** From May 1986 through December 31, 1990, respondent's conduct was subject to the District of Columbia Rules of Professional Responsibility; after January 1, 1991, respondent's conduct was subject to the District of Columbia Rules of Professional Conduct.

Disciplinary Rule 2–101 provided:

(A) A lawyer shall not knowingly make any misrepresentation about his or her ability, background, or experience ... or any other aspect of a proposed professional engagement, that is false, fraudulent, misleading, or deceptive, and that might reasonably be expected to induce reliance by a member of the public.

(B) Without limitation, a false, fraudulent, misleading, or deceptive statement or claim includes a statement or claim which:

....

(6) Contains a representation or implication that is likely to cause an ordinary prudent person to misunderstand or be deceived or fails to contain reasonable warnings or disclaimers necessary to make a representation or implication not deceptive.

Disciplinary Rule 2–102 provided:

(C) A lawyer shall not hold himself out as having a partnership with one or more other lawyers or professional corporations unless they are in fact partners.

Ethical Consideration 2–13 to D.R. 2–101 stated:

In order to avoid the possibility of misleading persons with whom he or she deals, a lawyer should be scrupulous in the representation of his or her professional status. One should not hold oneself out as being a part-

ner or associate of a law firm if he or she is not one in fact, and thus should not hold oneself out as a partner or associate if he or she only shares offices with another lawyer.

Since 1991, Rule of Professional Conduct 7.1 provides in pertinent part that "a lawyer shall not make a false or misleading communication about the lawyer...."

Rule 7.5 further provides in pertinent part:

(a) A lawyer shall not use a firm name, letterhead, or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if ... [it] is not otherwise in violation of Rule 7.1.

(d) Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact.

Comment 2 to Rule 7.5 states that "with regard to paragraph (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, Smith and Jones, for that title suggests partnership in the practice of Law."

**11.** The stipulation provides in relevant part that:

Respondent was associated with William G. McLain, Esquire, in the practice of law from 1975 to present. There was no written partnership agreement. Mr. McLain had no equity interest in the firm. He received a salary and bonuses when profits were good. He drew no salary when there were insufficient funds. Mr. McLain has testified that he had responsibility, along with respondent, for all client matters of the firm. He also has stated that he was not responsible for the debts of the firm.

*Beckman v. Farmer,* 579 A.2d 618, 628 (D.C. 1990).

The Board also concludes that no partnership existed. Moreover, the Board appears to interpret disciplinary rules as requiring McLain to have been Karr's "full-fledged" partner before he could be included in the firm name. As there was no disclaimer in the firm's name as to McLain's status in the firm and the public may have been misled,[12] the Board found that Karr had violated the disciplinary rules and recommends that this court impose a public censure.[13]

█ Whether a partnership exists depends on the actions and intent of the parties. *Id.* The Board argues that Karr's contention that McLain was a partner is insufficient, because McLain did not have the required intent to be a partner. The Board relies on McLain's sworn testimony in two other proceedings, an action filed in the Landlord Tenant Division of the Superior Court against McLain for rent allegedly due to the firm's landlord and a disciplinary proceeding brought against McLain by Bar Counsel. In both proceedings McLain testified that he was an employee of the firm without any ownership interest. Moreover, the Board points out that there was no written or verbal partnership agreement.

█ Karr contends that under general principles of partnership law, even if McLain was not a full-fledged equity partner, he was a non-equity, salaried partner. According to Karr, McLain shared in all firm profits, did not draw a salary when the firm had no funds, had authority to sign the firm's checks and was ethically and legally responsible for all cases handled by the firm. According to Karr, those factors made McLain his partner.

12. The firm's landlord apparently was led to believe that McLain was a partner because it sued McLain for the firm's rent.

13. The Hearing Committee recommended that there be no separate sanction for what it deemed to be Karr's "technical violation" of the rules concerning the law firm name.

14. We note that the Hearing Committee reached its determination that there was no partnership under the heading "Conclusions of Law."

The question whether McLain was a partner of some kind in the Karr firm is a question of ultimate fact not clearly resolved against Karr. *See Temple, supra,* 629 A.2d at 1208.[14] The stipulated facts agreed upon by Karr and Bar Counsel could support Karr's contention that McLain was a non-equity partner. McLain did not testify before the Hearing Committee in this case about his understanding of his relationship with Karr in the law firm. The Hearing Committee's and the Board's reliance on McLain's testimony in other cases to dispose of the partnership issue in this proceeding is problematic. In the landlord-tenant case, the landlord sued McLain as a partner for the firm's back rent. Although McLain's testimony was under oath, it was clearly against his interest in that case to testify to his partnership status in the firm. The suit was ultimately settled by Karr without adjudication of McLain's liability or determination of his partnership status. With respect to McLain's testimony in his disciplinary case, McLain withdrew his exceptions on the law firm name issue and did not brief the matter before this court. As the recommended sanction for McLain did not turn on his violation of the rules concerning the firm name, the court did not address the issue whether a partnership existed and whether use of McLain's name in the firm name violated the disciplinary rules.[15] *See McLain, supra,* 671 A.2d at 953. Moreover, McLain's disclaimer of partnership status in those two specific proceedings must be evaluated in the context of a seven-year course of conduct during which he permitted his name to be included in the law firm name and presumably, consistent with the firm name, held himself out to be a partner in the firm. Therefore, on the record before us we cannot conclude that there is substantial evidence of

15. In McLain's disciplinary proceeding the evidence was undisputed that McLain was not a partner of the firm and the issue was whether an associate violated the rules if he allowed his name to be used in the firm name. Karr sought but was denied an opportunity to intervene in McLain's case and therefore had no opportunity to question McLain during the course of the proceedings concerning his status in the firm.

record that clearly and convincingly shows there was no partnership between Karr and McLain.

The further, precise question reached by the Board, whether the disciplinary rules are violated by inclusion in the firm name of someone who is not a "full-fledged" partner, is an issue of first impression in this court. Karr argues that it is common and proper for firms to identify some of their non-equity salaried members as partners and that McLain was such a partner. According to Karr, this practice is common among large law firms; and, if it is proper for large firms to have different categories of "partners" listed in their letterhead, Karr argues it is also proper for small practitioners. The Board and Bar Counsel contend, on the other hand, that only full equity partners who share in the profits and losses of the firm and who have decision-making power over firm matters may have their names appear in the firm's name. According to Bar Counsel, "no law firm of which Bar Counsel has been made aware includes the name of non-partners on the letterhead as part of the firm's name. Nor is there evidence that any large firm in this jurisdiction has included the name of a non-equity, salaried partner in the firm's title." [16]

▮ The scope of the rules and whether there has been a violation of the rules must be ascertained in the light of the purpose of the rules. Karr argues that he did not violate the disciplinary rules because it is generally recognized that being a "partner" does not necessarily entail ownership, an equity-based portion of profits, or absolute managerial control. He argues that the purpose of the rules is the protection of the public and that internal firm financial and governance details are of little interest to clients whose real concerns are the capability, experience and higher level of responsibility of the individual lawyer representing their interests. While we recognize those factors are certainly important to any client, we also agree with Bar Counsel and the Board that the purpose of having partners accurately identified as such, whether in the law firm's name or otherwise,[17] is so that the public is not misled. When it comes to the issue of liability, what becomes most important is who will be financially responsible to the client.[18]

We do not need to address what seems to be a complex issue of perhaps uncertain resolution: the scope of the prohibition in the disciplinary rules with respect to use of the appellation "partner" or the use of lawyers' names in a law firm name in the context of the varied forms of lawyer participation in law firms that have developed as a consequence of the growth of law firms, intense competition and the increased mobility of lawyers and law practices. Suffice it to say that, in this case, we cannot conclude that Bar Counsel met his burden to prove that Karr violated the rules by clear and convincing evidence. Under the Code of Professional Responsibility, DR 2–101 provided that "a lawyer shall not *knowingly* make any misrepresentation ... that might reasonably be expected to induce reliance by a member of the public." (Emphasis added.) Since 1991, the Rules of Professional Conduct provide, in Rule 7.1, that "a lawyer shall not make a *false or misleading* communication about the lawyer or the lawyer's services." (Emphasis added) Both under the Code and under the Rules, it would be misleading to represent someone as a partner who is not "in fact" a partner. DR 2–102; Rule 7.5(d) and cmt. 2 per R 12.8.5, 3.5. Based on the stipulated facts of this case, however, we cannot determine that there was not "in fact" some sort of a partnership between Karr and McLain—

---

**16.** No evidentiary support is proffered for their respective propositions by either Karr or Bar Counsel.

**17.** We find no support in the rules for Bar Counsel's apparent distinction between the identification of a non-equity salaried colleague as a "partner" and the use of such a person's name in a firm name. Rule 7.5(a) of the Rules of Professional Conduct refers to "firm name, letterhead or other professional designation," and prohibits the inclusion in those designations of a "false or misleading communication about the lawyer" as prohibited by Rule 7.1. The Code of Professional Responsibility made no express reference to the firm name.

**18.** We are aware, of course, that vis-á-vis third parties, a lawyer whose name appears in a law firm name may be liable as partner by estoppel. *See Beckman, supra,* 579 A.2d at 627.

albeit not a "full-fledged" partnership. Moreover, the rules do not describe what kind of partnership is intended, whether only "full-fledged" partnerships, as the Board and Bar Counsel urge, or whether the rule envisions other arrangements recognized as partnerships under law. *See Beckman, supra,* 579 A.2d at 628.

Based on the stipulated facts and in light of the uncertainty surrounding the scope of the rules, Bar Counsel did not meet his burden of showing, by clear and convincing evidence, that Karr "knowingly" misrepresented or made "false or misleading" communications when he represented to the public, by means of his firm's name and stationery, that McLain was a "partner" in the firm. Thus, we conclude that Karr did not violate the disciplinary rules when he included McLain's name in the firm letterhead during the period 1986 to 1993.[19]

Accordingly, the case is remanded to the Board on Professional Responsibility for reconsideration of sanction in Karr I and for dismissal of Karr II.

*Remanded.*

---

19. In light of our conclusion that there was no violation, we need not address the appropriateness of the recommended sanction of public censure. We also need not address Karr's arguments that Board members with non-equity partners in their law firms should have recused themselves from consideration of this case and that enforcement of the rule against him is discriminatory because of what he alleges is the practice of large law firms of identifying as "partners" persons who are non-equity salaried lawyers with the firms.