**In re Andrew M. STEINBERG, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 99–BG–1537.**

District of Columbia Court of Appeals.

Argued Oct. 11, 2000.
Decided Nov. 2, 2000.

Traci M. Tait, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Andrew M. Steinberg, pro se.

Before SCHWELB and WASHINGTON, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

In its attached Report and Recommendation, the Board on Professional Responsibility has recommended that Andrew M. Steinberg, a member of our Bar, be suspended from practice for thirty days for conduct that seriously interferes with the administration of justice. The facts on which the recommendation was based are more fully described in the Board's Report. In essence, Steinberg was extremely dilatory in responding to Bar Counsel's requests for information on two separate but chronologically overlapping matters and failed to cooperate with the investigations. Steinberg had also previously been the subject of discipline in a separate case, see In re Steinberg, 720 A.2d 900 (D.C.

1998) (Steinberg I ), in which this court ordered his suspension from practice for thirty days.

Steinberg contends that the sanction recommended by the Board in the instant proceeding is too severe. He asserts that a reprimand would have been the appropriate discipline. We are, however, required to impose the sanction recommended by the Board unless doing so would "foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g). Substantially for the reasons stated by the Board, and especially in light of his prior suspension in Steinberg I, we are satisfied that Steinberg has failed to make the requisite showing. As the Board correctly stated,

> attorneys cannot be allowed to willfully ignore and frustrate the efforts of Bar Counsel and the Board to obtain responses to charges of serious ethical misconduct. Attorneys must know that if they choose this course of action, the consequences will be severe.

For the foregoing reasons, Andrew M. Steinberg is hereby suspended from practice for thirty days, effective fifteen days after the date of this order. We once again direct Steinberg's attention to the requirement of D.C. Bar R. XI, § 14 and to the consequences of noncompliance with these requirements, as set forth in D.C. Bar R. XI, § 16(c). See Steinberg I, supra, 720 A.2d at 901–02.

So ordered.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS
### BOARD ON PROFESSIONAL RESPONSIBILITY

**In the Matter of ANDREW M. STEINBERG, Respondent.**

**Bar Docket Nos. 203–98 & 372–98**

*REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

Respondent stands charged by Bar Counsel in each of these two separate but chronologically overlapping matters with

violating Rule 8.4(d) of the D.C. Rules of Professional Conduct for engaging in conduct that seriously interferes with the administration of justice and with violating D.C.App. R. XI, § 2(b)(3) for failing to comply with orders of this Board. The gist of the two matters is that Respondent was extremely dilatory in responding to Bar Counsel's requests for information.

Respondent does not contest the facts alleged in the petition or deny that he violated Rule 8.4(d) and D.C.App. R. XI, § 2(b)(3) in each matter. Respondent's Brief at 1. Respondent's exception to the Hearing Committee's recommended sanction of a 30–day suspension with the requirement that he demonstrate fitness prior to reinstatement is that it is too severe in light of the discipline imposed in factually comparable cases involving failures to cooperate with Bar Counsel. *Id.* at 1–2. Bar Counsel contends that the Hearing Committee's recommendation is consistent with applicable precedents. Brief of Bar Counsel at 1.

## A. *Facts Underlying Bar Docket No.203–98 (Steinberg/Pillay )*

1. The disciplinary complaint was docketed on or about May 1, 1998.[1] It was mailed by Bar counsel to Respondent at his address listed with the District of Columbia Bar, namely 1875 Eye Street, N.W., 12th Floor, Washington, D.C. 20006 under cover of a letter requesting a response from Respondent by May 15, 1998.[2] No response was received and the letter was not returned to the Office of Bar Counsel.

2. On or about July 7, 1998, Bar Counsel wrote to Respondent at 1750 K Street, N.W., 12th Floor, Washington, D.C. 20006,

an address previously listed with the Bar, to inform him of his responsibility to submit a response within five days. This letter was returned with a forwarding address provided by the Post Office, which was the address to which the complaint had been sent originally.

3. On or about July 22, 1998, Bar Counsel re-sent its letter and the complaint to Respondent at 1875 I Street, N.W., Washington, D.C. 20006. Respondent failed to respond, and the letter was not returned.

4. On August 25, 1998, Bar Counsel filed a motion with the Board to compel Respondent to answer the docketed complaint. Respondent was served with a copy by mail. The motion included as attachments Bar Counsel's prior correspondence as well as a copy of the ethical complaint to which Respondent was being requested to respond.

5. Respondent was personally served with the motion and attachments on September 10, 1998.

6. On October 8, 1998, the Board issued an order directing Respondent to respond to the ethical complaint within 10 days of the date of the order. The Board's order was mailed to Respondent on or about October 14, 1998 at 1875 I Street, N.W., 12th Floor, Washington, D.C. 20006. The order was not returned and Respondent did not respond.

7. Respondent finally responded to the complaint on or about March 8, 1999. Tr. at 15–16. In the intervening eight months to date, this complaint has not resulted in any formal charges against Respondent.

---

1. The complaint by Ms. Pillay grew out of a domestic relations matter and primarily alleged neglect and failure to communicate issues. Bar Exhibit ("B X").

2. In his testimony before the Hearing Committee, Respondent stated that his office was located at 1875 I Street for the three or four

months prior to August 1998 which is when he relocated his office to 1325 18th Street, Suite 103. From May 1997 to May 1998, Respondent's office was at 1825 I Street as a sublessee to a D.C. law firm. Transcript ("Tr."), March. 9, 1999 at 42–44.

## B. *Facts Underlying Bar Docket No.372–98 (Steinberg/Blumenthal )*

1. The disciplinary complaint against Respondent in this matter was docketed on or about August 24, 1998.[3] On August 26, 1998, Bar Counsel arranged for personal service on Respondent and mailed the complaint and a subpoena *duces tecum* with a cover letter requesting a response by September 5, 1998. The complaint was mailed to the address Respondent provided to the District of Columbia Bar, 1875 Eye Street, N.W., 12th Floor, Washington, D.C. 20006. The letter was subsequently returned by mail.[4]

2. On or about September 10, 1998, the complaint was personally served on Respondent at his residence, 7767 Astrella Court, Springfield, Virginia 22152.[5] No response was received.

3. On October 15, 1998, Bar Counsel wrote to Respondent at his Astrella Court address and at 7505 Ridgebrook Drive, Springfield, VA 22153, informing him of his responsibility to submit a written response within five days. Respondent failed to respond; Bar Counsel's letter was not returned.

4. On or about October 28, 1998, Bar Counsel sought to personally serve Respondent with the complaint and a subpoena *duces tecum* at his residence, the Astrella Court address. Respondent evaded service of process.

5. On December 2, 1998, Respondent was served by mail with a copy of Bar Counsel's motion to compel him to respond to the ethical complaint which was filed with the Board. The motion included as attachments all of Bar Counsel's previous correspondence as well as another copy of the ethical complaint.

6. On January 27, 1999, the Board issued an order directing Respondent to respond to the ethical complaint within 10 days and mailed it to Respondent at 7767 Astrella Court, Springfield, Virginia 22512. This letter was not returned and Respondent did not respond within the 10 days.

7. Respondent finally submitted a response to Bar Counsel on or about March 8, 1999. Tr. at 15–16. In the intervening eight months to date, no formal charges have been lodged as to the result of this complaint.

## C. *Evidence in Aggravation*

1. On November 30, 1998, the Court ordered Respondent suspended for a 30 day period in a reciprocal matter from Virginia involving dishonesty, failure to explain fees, failure to return the client's files and papers upon request, and failure to deliver client funds. *In re Steinberg,* 720 A.2d 900 (D.C.1998) (per curiam). The Court's order was mailed to 1750 K Street, N.W. even though Respondent had not had an office at that address for more than two years. Tr. at 27, 44.

2. Respondent testified before the Hearing Committee that he was not aware of the Court's November 30, 1998 Order until he received Bar Counsel's February 23, 1999 Notice of Non–Filing to the Court that he had failed to comply with the requirements of D.C.App. R. XI, § 14(g) within the 10–day period following his suspension as directed by the Court. *Steinberg,* at 901–902.

---

3. This complaint was filed by an attorney for a title insurance company and involved whether Respondent improperly held himself out as a title insurance agent in several real estate closings and issued title binders to lenders after the title insurance company canceled his authority to do so. BX 7.

4. As related in footnote 2 above, Respondent moved his law office in August 1998 to 1325 18th Street, N.W. Somewhat ironic in this second matter is the fact that the complainant, an attorney in D.C., informed Bar Counsel that Respondent's current address at that time was 1325 18th Street. *See* BX 7.

5. Respondent was also personally served with the complaint in Bar Docket No. 203–98 as described in ¶ 5, Part A above.

3. Respondent still had not complied with the requirements of § 14(g) as of March 9, 1999, the date of the hearing in Bar Docket Nos. 203–98 and 372–98. He informed the Hearing Committee that he had an appointment with an attorney to deal with his suspension scheduled for March 11, 1999. Tr. at 41.

4. In another disciplinary matter against Respondent, unrelated to any of the disciplinary matters discussed above, Respondent promptly provided Bar Counsel with a response to that ethical complaint on February 2, 1999. Tr. at 15–16.

5. Respondent had been issued a prior informal admonition in 1984 in Bar Docket No. 177–84.

### Discussion

Relying in large measure on *In re Delaney*, 697 A.2d 1212 (D.C.1997) and *In re Lockie*, 649 A.2d 546 (D.C.1994) (per curiam) where the attorneys received a 30–day suspension plus a fitness requirement for violations essentially the same as those charged against Respondent, the Hearing Committee recommended the identical sanction for Respondent—a 30–day suspension plus a fitness requirement. In his brief to the Board, Respondent argues that the facts underlying the sanction in *Lockie* were far more serious than the facts relating to himself.

We agree with the Hearing Committee that Respondent's conduct constitutes a serious violation of the D.C. Rules of Professional Conduct and warrants a 30–day suspension. *Lockie* made clear that attorneys cannot be allowed to willfully ignore and frustrate the efforts of Bar Counsel and the Board to obtain responses to charges of serious ethical misconduct. Attorneys must know that if they choose this course of action, the consequences will be severe.

The Office of Bar Counsel has many matters which deserve prompt attention. Where attorneys cavalierly disregard requests for responses from Bar Counsel, Bar Counsel is then forced to expend substantial amounts of money and resources which could and should have been more appropriately expended on other pressing matters.

A much closer question, however, is whether a showing of fitness should also be imposed. Clearly fitness is appropriate where an attorney's refusal to cooperate with Bar Counsel and failure to comply with Board orders continues throughout the attorney disciplinary proceedings. *See, e.g., Delaney,* where the Court noted that a fitness requirement is appropriate where "the Respondent evinces persistent disregard for the disciplinary process and continued refusal to cooperate with Bar Counsel and the Board, despite numerous opportunities to do so." 697 A.2d at 1213, citing *In re Smith*, 649 A.2d 299, 300 (D.C. 1994); see *also In re Wright*, 702 A.2d 1251, 1257 (D.C.1997) (also citing the same language in *Smith); Lockie, supra; In re Giles,* Bar Docket No. 351–97 (BPR filed Mar. 9, 1999). Where a respondent never cooperates with the disciplinary process, including failing to respond to the Hearing Committee and the Board, fitness should as a rule be required so that the attorney can demonstrate that he or she has a clear understanding of his or her professional ethical responsibilities before being again allowed to practice in this jurisdiction.

In this matter, Respondent delayed for approximately ten months in responding to the complaint in Docket No. 203–98 and delayed an overlapping six months in Docket No.372–98. But ultimately, he responded to the two complaints. He also participated in the disciplinary proceedings before a Hearing Committee and before the Board with regard to the two pending matters. Before the Hearing Committee, Respondent conceded the violations and admitted responsibility when he stipulated to both the underlying facts and the charged violations. This made for a very brief proceeding before the Hearing Committee. In addition, in a completely unre-

lated request for information sent to Respondent by Bar Counsel in February 1999, he promptly submitted a response.

A distinction should be drawn between attorneys such as the respondents in *Delaney, Wright, Lockie* and *Smith* who never responded to Bar Counsel or the Board and entirely ignored the disciplinary process, and attorneys such as Respondent who are extremely dilatory in making a response but who ultimately respond and who participate in the disciplinary process. For example, in *In re Karr*, 722 A.2d 16 (D.C.1998), which involved an attorney who failed to timely respond to multiple requests for responses to complaints in two separate matters, fitness was not considered as part of the sanction there—notwithstanding the existence of several other violations.[6] Respondent did not refuse to cooperate with the disciplinary process but rather was simply dilatory. In the end, he was a full participant in the disciplinary process and thus did not show the kind of disregard for the disciplinary system that warrants a fitness requirement.

The final question for resolution is whether Respondent's counseling by a psychiatrist growing out of his marital problems and his possible attention deficit disorder ("ADD") requires the imposition of a fitness requirement for the protection of the public. During the hearing in this matter, Respondent testified that the breakup of his marriage and separation from his two daughters led to major personal stress in 1997. He also claimed that he was diagnosed with attention deficit disorder ("ADD") in early 1998, a condition which was exacerbated by his marital stress. He and his wife had jointly met with one

psychiatrist in 1995 "to try and work out some problems" and then he saw a psychiatrist from the summer of 1997, when his marriage "started to really fall apart" until the spring of 1998. Tr. at 21.

Respondent testified to the Hearing Committee that he could not "bring [himself] to sit down in front of the computer and respond to [Bar Counsel's requests]." Tr. at 9–10. He could not explain why he did not respond, that it possibly was a subconscious effort of avoidance, but that he did not intend to obstruct justice. He said he had a mental block as to dealing with the two complaints. He further testified, however, that he did not have problems during this same time frame responding to motions and interrogatories in his clients' cases. *Id.* at 23. Respondent further explained to the Hearing Committee that, in February 1999, when he received the two binders of Bar Counsel's exhibits for the March 9, 1999 hearing before the Hearing Committee, that it was "like a wake up call. It was like you need to do something. Otherwise your life is just going to go right down the toilet." Tr. at 12.

It does not appear to the Board that Respondent's consultations with psychiatrists in the context of trying to salvage a failing marriage are of such a nature as to create doubts as to his fitness to practice law such that he must demonstrate his qualifications under the requirements of *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985). Respondent's consultations do not suggest the mental instability and lack of reliability that led the Court to impose fitness requirements in *In re Steele*, 630 A.2d 196, 201 (D.C.1993) (respondent's acknowledgment of unidentified personal problems that adversely affected her emotional stability required further inquiry in

---

**6.** The Court remanded *Karr* to the Board for reconsideration of its 30–day suspension in light of its finding that Karr was in violation of five ethical violations as opposed to the seven found by the Board. The two violations stemming from Karr's failures to cooperate with Bar Counsel in violation of Rule 8.4(d), however, were unaffected by the Court. *See*

*Karr*, 722 A.2d at 21–22. On remand, the Board recommended a board reprimand for the two 8.4(d) violations and the three other violations; no recommendation as to fitness was ever made by the Board for Karr's two failures to cooperate with Bar Counsel—either before or after the remand.

a fitness hearing); *In re Lyles*, 680 A.2d 408, 418–19 (D.C.1996) (per curiam) (suggestion by respondent of possible mental illness required inquiry into Respondent's fitness to practice law).

Respondent's possible ADD is also not of such moment, even if such information is deemed to have been properly introduced as evidence in this proceeding, that it lends itself to a fitness determination. Respondent testified about his possible ADD before the Hearing Committee and attached *part* of a psychologist's report discussing his ADD to his post-hearing submission to the Hearing Committee. Bar Counsel is correct in objecting to this late produced evidence which it had not been able to review with its experts or comment on. But the bottom line is that the evidence relating to Respondent's ADD was not significant in any event and clearly not sufficient to mitigate Respondent's 30–day suspension. In the same vein, its *de minimis* nature also does not suggest to us that a requirement of fitness should be imposed because of the ADD.

### Recommendation

The Board recommends that Respondent be suspended from the practice of law for a period of thirty days.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: s/ Paul L. Knight
       Paul L. Knight

All members of the Board concur in this Report and Recommendation except Ms. Fort, who has filed a separate dissenting opinion.

Date: November 24, 1999

### ' DISSENT

I concur in the Board's conclusions with respect to the nature of the misconduct by Respondent; but I dissent from the Board's sanction recommendation. I be-lieve a public censure is the appropriate sanction for Respondent.

As noted by the Board and the Hearing Committee, the Court has imposed a short suspensory sanction with conditions in cases where a respondent has been charged with failure to cooperate with Bar Counsel coupled with one or more additional disciplinary violations. *See In re Smith*, 649 A.2d 299 (D.C.1994)(per curiam)(respondent suspended for 30 days with the requirement to prove fitness for reinstatement for failure to cooperate with Bar Counsel, for failure to comply with a Board order and for failure to return a client's property promptly); *In re Lilly*, 699 A.2d 1135 (D.C.1997)(respondent suspended for 30 days for conduct prejudicial to the administration of justice for repeatedly ignoring Bar Counsel's request for information regarding a misconduct complaint with reinstatement conditioned on his compliance with Bar Counsel's requests); *In re Delaney*, 697 A.2d 1212 (D.C.1997)(respondent suspended for 30 days with a requirement to prove fitness for reinstatement and respond to Bar Counsel inquiries for failure to cooperate with Bar Counsel); *In re Lockie*, 649 A.2d 546 (D.C.1994)(per curiam)(respondent suspended for 30 days with a requirement to prove fitness and respond to Bar Counsel inquiries for reinstatement for egregious failure to cooperate with Bar Counsel and Board in two cases and for failing to participate in his disciplinary hearing); *In re Wright*, 702 A.2d 1251 (D.C.1997)(per curiam)(respondent suspended for 30 days with requirement to prove fitness for reinstatement and to make restitution in the amount of $2,000 for failure to respond to Bar Counsel and a Board order along with violations of four additional disciplinary rules).

The Board recognizes that Respondent ended his dilatory tactics in time to become a full participant in the disciplinary process before the Hearing Committee and before the Board. The Board further recognizes that a distinction should be drawn

between Respondent and the attorneys in *Smith, Delaney, Lockie* and *Wright* who never cooperated with the disciplinary process. The Board makes this distinction by recommending a sanction of a 30–day suspension with no fitness requirement By doing so, the Board distinguishes this case from *Lockie* where the Court said:

> We agree with the view expressed by the Board that "egregious failure to co-operate with the Office of Bar Counsel and th[e] Board constitutes a serious violation of the D.C. Rule[s] of Professional Conduct, and that offender runs the risk of being subjected to serious sanctions, including a suspension coupled with a requirement to show fitness to practice law."
>
> We conclude, therefore, that "[i]n circumstances where the respondent has repeatedly evinced indifference (or worse) toward the disciplinary procedures by which the Bar regulates itself, a requirement that the attorney prove fitness to resume practice [together with a thirty-day suspension] is entirely reasonable." *In re Siegel, supra,* 635 A.2d at 346.

649 A.2d at 547.

I would recognize the distinction between Respondent's actions and the actions of the respondents in the cases cited by the Board by imposing a sanction of a public censure for two reasons. First, the facts underlying Respondent's two violations of Rule 8.4(d) do not appear to me to constitute the type of egregious failure to cooperate with the Office of Bar Counsel and the Board that has warranted a suspensory sanction in past cases. Respondent was slow coming to the realization that he was under an ethical obligation to cooperate with Bar Counsel. He delayed the process initially by evading service and by not filing timely responses to the two complaints. His actions clearly burdened the Office of Bar Counsel and our disciplinary system unnecessarily. But unlike the respondents in the cases cited by the Board, Respondent saw the error of his ways and ultimately responded to the two complaints filed against him, albeit ten months late in Docket No. 203–98 and six months late in Docket No. 372–98. Neither case has resulted in a finding of any other disciplinary violations by Respondent.

I am concerned that the Board's recommendation of a 30–day suspension is not in line with the discipline imposed where a procrastinating respondent has a change of heart and ultimately cooperates with Bar Counsel. *See In re Karr,* 722 A.2d 16 (D.C.1998); Order, May 10, 1999 (public reprimand for two cases of failure to cooperate with Bar Counsel and two additional disciplinary violations where numerous mitigating circumstances are present) and *In re Hill,* 619 A.2d 936 (D.C.1993)(per curiam)(public censure for respondent appointed by the Court to represent an incarcerated client in an appeal of a criminal matter, during which time he violated DR 6–101(A)(3), based on his failure to file a brief on behalf of a client, DR 1–102(A)(5) based on his failure to respond to two court orders to file a timely brief, and Rule 8.4(d), based on his failure to respond to Bar Counsel's request for a response to allegations of misconduct and to the Board's order to compel responses). The 30–day suspension recommendation appears to present the Court with a recommendation that would "foster a tendency towards inconsistent dispositions for comparable conduct" when reviewed by the Court pursuant to D.C.App. R. XI, 9(g)(1). *In re Chang,* 694 A.2d 877, 878 (D.C. 1997)(per curiam)(interpreting 9(g)(1) predecessor 9(g) and citing *In re Reed,* 679 A.2d 506, 508–09 (D.C.1996)(per curiam)).

Second, I believe a public censure by the Court sends an appropriate public message to attorneys who are recalcitrant in the early stages of a disciplinary investigation. It tells them that the use of dilatory tactics to avoid responding to a disciplinary complaint will not be tolerated. At the same time, this recommended sanction recognizes that a respondent who, upon fur-

ther reflection, realizes the error of his ways in time to fully participate in the hearing before the Hearing Committee may not be treated as harshly as a respondent who never acknowledges that an attorney has an ethical obligation to work with Bar Counsel and the Board on a disciplinary matter.

Here, Respondent has shown that he has learned his lesson. He actively participated in these two cases before the Hearing Committee and the Board. As noted by the Board, Respondent responded promptly in February 1999 to Bar Counsel when he received an inquiry in another disciplinary matter unrelated to any of the disciplinary matters discussed in this pro-

ceeding. A public censure under these circumstances underscores the importance of timely cooperation in disciplinary matters to this respondent and to other members of the Bar. I recommend a public censure to the Court in this case.

s/ Joanne Doddy Fort
   Joanne Doddy Fort

November 24, 1999