**In re Paris A. ARTIS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 181396).**

**No. 03–BG–211.**

District of Columbia Court of Appeals.

Argued Sept. 2, 2004.

Decided Sept. 8, 2005.

---

Paris A. Artis, pro se.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Traci M. Tait, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel

at the time the brief was filed, for the Office of Bar Counsel.

Before: SCHWELB, WAGNER,* and REID, Associate Judges.

WAGNER, Associate Judge:

The Board on Professional Responsibility (the Board) has recommended that respondent, Paris A. Artis, be suspended from the practice of law in the District of Columbia for thirty days with his reinstatement conditioned upon his compliance with Bar Counsel's subpoena *duces tecum* and an order of this court enforcing it. The proposed discipline is based on the report and recommendation of a Hearing Committee that respondent had violated D.C. R. Prof. Conduct 8.4(d) (conduct that seriously interferes with the administration of justice) and D.C. Bar R. XI, § 2(b)(3) (failure to comply with an order of the Board or the D.C. Court of Appeals). A majority of the Board concurred in the Hearing Committee's findings that respondent violated both rules, although it rejected one of the grounds upon which it appeared that the Hearing Committee's Rule 8.4(d) violation was based.[1] The Board concurred in the Hearing Committee's recommendation of sanction with the exceptions of a requirement that respondent answer Bar Counsel's interrogatories and that respondent prove fitness as a condition of reinstatement. The Board, through its Executive Attorney, filed a brief in this court in support of its report and recommendation. Bar Counsel filed a brief supporting, in part, the Board's recommendation. However, Bar Counsel

urges, contrary to the Board's recommendation, that conditions of reinstatement also include responses to Bar Counsel's questions and a showing of fitness to practice law. Bar Counsel also challenges some of the Board's conclusions of law. Respondent did not file a brief in this court. The Board concluded that reinstatement conditioned on respondent's responses to Bar Counsel's subpoena and the order enforcing it would be appropriate under the circumstances and that respondent's conduct did not rise to the level of egregiousness warranting a fitness requirement under our case law. We agree with the Board's recommended sanction and adopt it for the reasons hereinafter stated.

## I.

### A. *Factual and Procedural Background*

On April 10, 2000, Bar Counsel filed a Petition Instituting Formal Disciplinary Proceedings and a Specification of Charges against respondent, who was admitted to the District of Columbia Bar on December 17, 1973. The charges alleged violations of D.C. R. Prof. Conduct 8.4(d) and D.C. Bar R. XI, § 2(b)(3). The violations were based on respondent's failure to respond to written interrogatories propounded by Bar Counsel during a disciplinary investigation and to the Board's order, issued through its vice-chair, compelling responses and his failure to respond to Bar Counsel's subpoena *duces tecum* and an order of this court requiring compliance.

---

* Judge Wagner was Chief Judge of the court at the time this case was argued. Her status changed to Associate Judge on August 6, 2005.

1. Paul R.Q. Wolfson, a member of the Board, wrote a concurring and dissenting statement in which Mr. Martin Baach, another Board member, joined. They concluded that there was no violation of D.C. R. Prof. Conduct 8.4(d) because respondent had a legitimate basis to question the Board's order compelling him to respond to Bar Counsel's interrogatories, which exceeded the proper scope of any reasonable written inquiry.

An evidentiary hearing was held before a Hearing Committee, and respondent appeared *pro se* and testified on his own behalf. Except as otherwise stated, the facts are undisputed. The evidence showed that respondent represented Roland Butler, the removed personal representative of the Estate of Harold O. Butler, deceased, in a case in the Probate Division of Superior Court, Adm. No. 2897–90. The court referred the case to the Auditor–Master to state an account after removing Roland Butler as personal representative for his failure to file an inventory and first account. Bar Counsel initiated an investigation of respondent after receiving a copy of the Report of the Auditor–Master (the Report) that questioned whether a deed transferring decedent's interest in real property during his lifetime to his children, Roland Butler (the removed personal representative) and British Gary, was a fraudulent conveyance intended to defeat the claims of Harold Butler's creditors. According to the Report, Harold Butler was a defendant in a civil action for damages that went to trial on July 20, 1989, resulting in a judgment against him in the amount of $12,000. The deed was executed after the trial, but before the final entry of judgment. Respondent notarized the deed, which was not recorded. The Auditor–Master reported that other aspects of the transaction might also warrant action by Bar Counsel, including a second trust held by respondent's company against the decedent's real property that was not recorded until after decedent's death and Ms. Gary's statement that she had not been present when her father executed the deed.[2]

On April 15, 1998, Bar Counsel notified respondent that the matter had been docketed for formal inquiry, provided him with a copy of the Auditor–Master's report and requested a substantive response to the allegations of misconduct in the report. After not receiving the response by April 29, 1998, Bar Counsel wrote respondent again informing him of his responsibility to comply with the request within five days and that failure to comply might result in a formal charge of failure to cooperate with Bar Counsel. By letter dated April 29, 1998, respondent replied to Bar Counsel's letter, stating that the Auditor–Master's report contained no allegation of misconduct and only a confused question about whether the deed in question represented a fraudulent conveyance. He explained that he did not understand the other "significant questions" raised by the Auditor–Master, since he had informed her that he had notarized the deed for Harold and Roland Butler, both of whom had appeared before him. He also stated that he informed the Auditor–Master that he had no recollection concerning Ms. Gary's signature, but he believed the documents were taken to her by Mr. Roland Butler for signature and that was probably why the deed had not been recorded. Respondent stated further that he was

---

2. Specifically, the Auditor–Master stated in pertinent part:

Mr. Artis reported ... that to his recollection, Ms. Gary was not present in the room at the time Harold O. Butler executed the Deed. Ms. Gary reported ... that she didn't think the real estate was hers, and that she was not in Mr. Artis' office until after her father had passed.... Mr. Artis reported ... that he could not locate the original Deed and [tax] exemption forms. In addition, [Mr. Artis] advised that he held a mortgage in the amount of $7,500.00 against the decedent's real estate. Foreclosure counsel advised the Auditor–Master that a second trust to Mortgage Savers, Inc., [Mr. Artis'] company, dated September 1, 1989, (after the conclusion of the trial in *Davis v. Butler*) was not recorded against the decedent's property until March 20, 1991, *i.e.*, after Mr. Butler's death.

quite appalled that the auditor master made such a "reckless" accusation based upon "questions" by Mr. Butler's successor personal representative, who seemingly relinquished his position after I explained his searching and unknowing inquiries. I am not surprised by such natural suspicions and accusations, but do not choose to practice law defending unfounded queries .... If any further response is deemed, please provide me with a detailed statement and *specific* accusations of misconduct.

On May 19, 1998, Bar Counsel wrote respondent, stating that "the allegations contained in the Report of the Auditor–Master speak for themselves," and that the office was investigating respondent's representation of Roland Butler with respect to his father's estate. Bar Counsel included six written interrogatories, with sub-parts. Bar Counsel also enclosed a subpoena *duces tecum* seeking all documents related to the mortgage loan and trust against the estate and all retainer agreements, records of compensation, billing records, and copies of checks received as compensation from Harold O. Butler, Roland Butler and/or British Gary. Bar Counsel set a deadline of June 4, 1998, for respondent to answer the interrogatories and request for production of documents. Respondent failed to reply, and on June 10, 1998, Bar Counsel wrote respondent a letter warning him again that failure to respond could result in a formal charge of failure to cooperate.

On June 25, 1998, Bar Counsel filed a motion with the Board on Professional Responsibility, seeking to compel responses. Respondent did not reply to the motion, and the Board, acting through its vice-chair, issued an order requiring respondent, within ten days, to provide substantive answers to each allegation set forth in Bar Counsel's complaint, including the Au-

ditor–Master's report, and to the six sets of questions posed to respondent by Bar Counsel's letter of May 19, 1998. The order further stated that a failure to comply would lead Bar Counsel to "consider whether [his] conduct constitutes, *inter alia*, conduct that seriously interferes with the administration of justice in violation of Rule 8.4(d)." Respondent still did not reply, and Bar Counsel initiated enforcement proceedings in this court related to respondent's failure to comply with the subpoena *duces tecum*. Although personally served with Bar Counsel's motion, respondent filed no response. This court issued an order requiring respondent to comply with the subpoena within ten days of its order.

Respondent testified before the Hearing Committee that he provided to a former Assistant Bar Counsel some documents, including some of the requested materials. However, that assistant testified that the documents respondent provided were related to another proceeding. Respondent also took the position that the allegations made in the Auditor–Master's report, when considered with Bar Counsel's inquiries, raised self-incrimination issues.

### B. *Reports and Recommendations of the Hearing Committee and the Board*

The Hearing Committee found that respondent had violated the two rules as alleged based on all of the conduct charged by Bar Counsel and recommended a thirty-day suspension with reinstatement conditioned on respondent's compliance with Bar Counsel's request for information and production of documents and proof of fitness. Neither Bar Counsel nor respondent filed exceptions to the Hearing Committee's report and recommendation. The Board affirmed the Hearing Committee's findings and conclusions that respondent violated D.C. Bar R. XI, § 2(b)(3) by failing to respond to orders of the Board and

the Court and D.C. R. Prof. Conduct 8.4(d) in that he hampered Bar Counsel's investigation by failing to respond to Bar Counsel's questions and the subpoena *duces tecum* after being compelled by the Board to do so. The Board rejected the Hearing Committee's conclusion that respondent also violated D.C. R. Prof. Conduct 8.4(d) by failing to provide a substantive response to Bar Counsel's initial letter, having concluded that respondent's letter was sufficient to meet the requirements of a general denial to the allegations in the Auditor–Master's report.[3] The Board agreed with the Hearing Committee's recommendation of a thirty-day suspension with reinstatement conditioned on respondent's compliance with the subpoena *duces tecum.* However, the Board did not concur with the Hearing Committee's recommendation that a showing of fitness be a condition of reinstatement because that would be inconsistent with prior cases. Further, the Board declined to impose as a condition of reinstatement that respondent answer Bar Counsel's initial questions because of respondent's general denial and the overly broad questions, respondent's assertion of privilege with respect to some of the questions, and the expectation that his responses to the subpoena *duces tecum* would answer some of the questions.[4]

## II.

The Board urges this court to adopt its recommended sanction, particularly given the strong presumption favoring the Board's recommended sanction where, as here, the recommendation is consistent with the sanction imposed for comparable misconduct and is warranted otherwise by the circumstances. Bar Counsel agrees with the Board's conclusions regarding respondent's ethical violations. However, Bar Counsel contends that neither the facts nor the law supports the Board's exclusion of a requirement that respondent reply to Bar Counsel's written request for information. Bar Counsel further contends that a fitness requirement should be imposed under the circumstances presented.

### A. *General Applicable Legal Principles*

Respondent is charged with violating two ethical rules: D.C. R. Prof. Conduct 8.4(d) and D.C. Bar R. XI, § 2(b)(3). Under D.C. R. Prof. Conduct 8.4(d), "[i]t is professional misconduct for a lawyer to ... [e]ngage in conduct that seriously interferes with the administration of justice[.]" The failure of a member of the Bar to respond to Bar Counsel's inquiries or an order of the Board during the course of a disciplinary investigation has been held to constitute conduct that interferes with the administration of justice under this rule. *See, e.g., In re Mattingly,* 790 A.2d 579, 580 (D.C.2002); *In re Wright,* 702 A.2d 1251, 1255 (D.C.1997); *In re Delaney,* 697 A.2d 1212, 1213–14 (D.C.1997). D.C. Bar R. XI, § 2(b)(3) provides that an attorney's "[f]ailure to comply with any order of the Court or the Board issued pursuant to [Rule XI governing disciplinary proceedings]" is misconduct.

---

**3.** The Hearing Committee based its findings of violations of the two disciplinary rules upon respondent's consistent failure to cooperate with Bar Counsel's investigation. It rejected the argument that respondent's letter in response to Bar Counsel's initial inquiry constituted a general denial.

**4.** It is the Board's position

that the failure to respond to the questions, standing alone, did not violate Rule 8.4(d). Rather, it found a violation of the rule based on [r]espondent's entire course of conduct, including his failure to respond to questions or to object to them, to respond to Bar Counsel's motion to compel a response, or to note an objection to the Board order granting the motion.

In deciding whether to accept the Board's recommended sanction for violations of the disciplinary rules, "this court considers the nature of the violation, prior disciplinary sanctions, mitigating and aggravating circumstances, protection of the public, courts and the legal profession, and, to the extent it can be determined, the moral fitness of the attorney." *In re Corizzi*, 803 A.2d 438, 441–42 (D.C.2002) (citing *In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc)) (other citation omitted). In disciplinary proceedings, this court will accept the Board's factual findings unless they are not supported by substantial evidence in the record and will adopt its recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1); *In re Hallmark*, 831 A.2d 366, 371 (D.C.2003); *In re Steele*, 630 A.2d 196, 199 (D.C.1993). Thus, "[t]he Board's recommended sanction comes to the court with a strong presumption in favor of its imposition." *Hallmark*, 831 A.2d at 371 (citing *In re Lopes*, 770 A.2d 561, 567 (D.C.2001)) (other citation omitted). Although the Board's recommended sanction is given considerable deference, the ultimate choice of sanction is for the court to decide. *In re Dunietz*, 687 A.2d 206, 210 (D.C.1996) (citing *In re Temple*, 629 A.2d 1203, 1207 (D.C.1993)) (other citations omitted). We have said that

> [Rule XI, § 9(g)(1)] endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise. The rule requires that we enforce a general sense of equality in the sanctions handed out, but it otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable.

*Id.* (quoting *In re Haupt*, 422 A.2d 768, 771 (D.C.1980)). The Board's recommendation and Bar Counsel's challenges must be considered applying these principles.

### B. *Recommendations for Sanction*

The principal area of disagreement between the Board and Bar Counsel concerns the Board's recommended sanction. The Board unanimously recommended a thirty-day suspension, with reinstatement conditioned on compliance with the subpoena *duces tecum* and the Court's order enforcing it, without a showing of fitness.[5] The Board contends that its recommendation is consistent with the sanctions imposed for similar misconduct and satisfies the purposes of discipline of protecting the courts, the profession and the public. In rejecting a fitness showing as a condition of reinstatement, the Board sought to distinguish between attorneys who have ignored entirely the disciplinary process and those who have made some effort to participate. In concluding that respondent's conduct did not reach the level of egregiousness that warrants a showing of fitness for reinstatement, the Board considered, in part, that respondent had submitted a general denial in response to Bar Counsel's initial inquiry, a conclusion that Bar Counsel challenges. Since resolution of the issue may bear upon the appropriate sanction, we consider it preliminarily.

---

5. In 1992, respondent was given an informal admonition for sending an attorney who had been disbarred to represent a client at a deposition. In 1982, respondent was censured publicly for commingling client funds, without loss to the client, in a case where a Hearing Committee found that respondent "acted honestly, albeit mistakenly," in violating the disciplinary rules. It is the Boards's position that this prior discipline is insufficient to alter its recommendation, and we find no reason to conclude otherwise.

### 1. *Respondent's General Denial*

While acknowledging that the adequacy of respondent's letter in response to Bar Counsel's initial inquiry formed no basis for the conclusion that he violated D.C. R. Prof. Conduct 8.4(d), Bar Counsel takes issue with the Board's conclusion that respondent's letter in response to the initial inquiry constituted a general denial.[6] The Board took into account respondent's initial response in making its recommended sanction; therefore, we consider it.

■ "An attorney under investigation has an obligation to respond to Bar Counsel's written inquiries in the conduct of an investigation, subject to constitutional limitations." D.C. Bar R. XI, § 8(a). The form or the essential elements of the response required is not specified in the rule. The Board has stated in its case law that an attorney who is notified by Bar Counsel about a complaint is entitled to make a "general denial" of the charges. *See In re Confidential (MJM)*, Bar Docket No. 20–87, pp. 18–20 (BPR Nov. 8, 1991). Bar Counsel argues that respondent's letter would be insufficient to constitute a general denial under the civil rules of the Supe-

rior Court from which the concept was adopted, apparently. *See* Super. Ct. Civ. R. 8(b) (specifying the form of denials and defenses to an adverse party's claims).[7] Setting aside that the Board's procedures do not mandate that an attorney's response to Bar Counsel's inquiry meet the standard set forth in Super. Ct. Civ. R. 8(b), that rule simply calls for an admission or denial of the allegations or an effective denial when the pleader can assert that he or she lacks the knowledge and information sufficient to form a belief as to the truth of an allegation. *See* Super. Ct. Civ. R. 8(b); *see also Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir.1984) (Under Fed. R.Civ.P. 8(b), an answer stating lack of sufficient information to know whether the allegation is true has the effect of a denial.).[8] The rule is also subject to the qualifications of Super. Ct. Civ. R. 8(e) calling for a simple, concise and direct statement. In short, the theory of Rule 8(b) is that the answer "should apprise the opponent of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable

6. Although the Hearing Committee stated that it was not confronted with an issue as to whether respondent's statement amounted to a general denial of the charge being investigated, it concluded that his letter of April 29, 1998, was not a general denial, but simply a statement that no substantive response would be forthcoming.

7. Super. Ct. Civ. R. 8(b) provides in pertinent part:

A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial.... Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the

pleader may make denials as specific denials of designated averments or paragraphs, or may generally deny all the averments except such designated averments or paragraphs as the pleader expressly admits; but, when the pleader does so intend to controvert all its averments ..., the pleader may do so by general denial....

8. Super. Ct. Civ. R. 8(b) is identical to the federal counterpart. " 'When a local rule and a federal rule are identical, or nearly so, we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent, and we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule.' " *Lenkin v. District of Columbia Rental Hous. Comm'n*, 677 A.2d 46, 49 (D.C.1996) (quoting *Montgomery v. Jimmy's Tire & Auto Ctr.*, 566 A.2d 1025, 1027 (D.C.1989)).

the plaintiff to prevail." Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1261 at 526 (3d ed. 2004). . Even assuming that the rule were applicable to this disciplinary proceeding, contrary to Bar Counsel's position, respondent's letter would have been sufficient to apprise Bar Counsel of his position on the statements in the Auditor–Master's report, and it requested specification of the charges if any further response was required.

Bar Counsel asserts, extracting from the Hearing Committee's report, that respondent's letter was not a denial, but "simply a statement that there [would] be no substantive response to Bar Counsel's requests." However, as the Board recognized, respondent's letter clearly went much further than that. As the Board outlined in its report, respondent stated in his letter that the Auditor–Master's report contained no allegation of misconduct and that the Auditor–Master's accusations were reckless. He also explained that he did not understand the Auditor–Master's report, since he had informed her that he had notarized the deed for the decedent, Mr. Harold O. Butler, and his son, Mr. Roland Butler, the removed personal representative, both of whom appeared before him. Further, he answered that he had informed the Auditor–Master that he had no recollection as to Ms. Gary's signature, but he believed that Mr. Roland Butler had taken the deed to her for signature and that this was probably why the deed was not recorded. Respondent concluded his letter by requesting a detailed statement and specific accusations of misconduct if any further response was necessary.

Respondent's answer, in which he denied that the facts alleged constituted misconduct on his part, challenged the Auditor–Master's accusation as reckless, explained his role in the questioned transaction and requested a specification of charges, if any further response was necessary, is sufficient to place Bar Counsel on notice that respondent denied engaging in any misconduct and what he had done in connection with the transaction. This is particularly so in light of the fact that Bar Counsel did not identify the alleged misconduct to which she referred in the Auditor–Master's report or direct respondent to address any specific statements in the report. Under these circumstances, we agree with the Board that, insofar as Bar Counsel's initial inquiry is concerned, respondent's letter was adequate to comply with D.C. Bar R. XI, § 8 (requiring attorneys under investigation to respond to Bar Counsel's written inquiries).

### 2. *Propriety of a Fitness Requirement for Reinstatement*

Bar Counsel argues that a fitness requirement should be imposed as a condition of reinstatement because: (1) respondent's conduct did not fall short of the type of egregious conduct where a fitness requirement has been imposed in other cases; and (2) "[r]espondent's psychological/emotional/mental state also calls for a showing of fitness." It is the Board's position that "[r]espondent's level of cooperation in this proceeding and acknowledgment of misconduct distinguishes this case from the egregious disregard of the disciplinary process emblematic of misconduct requiring a showing of fitness." With respect to Bar Counsel's second ground for a fitness showing, the Board argues that this argument was not preserved and that, in any event, the evidence was insufficient to support a fitness requirement on the basis of any alleged psychological problem. We consider each of these arguments in turn.

### (a) *Applicable Legal Principles for Fitness Requirement*

We have held that " 'in circumstances where the respondent has repeatedly

evinced indifference (or worse) toward the disciplinary procedures by which the Bar regulates itself, a requirement that the attorney prove fitness to resume practice [together with a thirty-day suspension] is entirely reasonable.'" *Delaney, supra,* 697 A.2d at 1213 (quoting *In re Lockie,* 649 A.2d 546, 547 (D.C.1994)) (in turn citing *In re Siegel,* 635 A.2d 345, 346 (D.C.1993)). In *Delaney,* like the present case, respondent was found to have violated D.C. R. Prof. Conduct 8.4(d) and D.C. Bar R. XI, § 2(b)(3). 697 A.2d at 1212. After an ethical complaint was filed against Delaney, he never submitted any responses to the charges, to Bar Counsel's inquiries or to the Board's order. *Id.* at 1213. Significantly, the Hearing Committee found that Delaney had "evaded service of documents sent to him, necessitating extreme measures to effect service," and, unlike the present case, Delaney did not appear at the hearing. *Id.* at 1213 & n. 3. This court adopted the recommendation of the Board[9] for a thirty-day suspension with a requirement that Delaney prove fitness as a condition of reinstatement. In adopting the recommendation, however, we observed that since neither respondent nor Bar Counsel excepted to the recommendation, "our review of the Board's recommendation is 'especially deferential.'" *Id.* at 1214 (quoting *In re Jeffries,* 685 A.2d 1165 (D.C.1996)).

In *Mattingly, supra,* 790 A.2d at 579, and *In re Giles,* 741 A.2d 1062 (D.C.1999), cited by Bar Counsel, we imposed a thirty-day suspension with a fitness requirement for reinstatement for violations of D.C. Bar R. XI, § 2(b)(3) and D.C. R. Prof. Conduct 8.4(d). Again, neither Bar Counsel nor the respondent opposed the recommended sanction; therefore, our review, as

in *Delaney, supra,* was "especially deferential." *Mattingly,* 790 A.2d at 580; *Giles,* 741 A.2d at 1062. In *Mattingly,* it was the second time that respondent had been suspended for the same misconduct. 790 A.2d at 580. In *Giles,* the record showed that respondent "repeatedly and deliberately failed to respond to written inquiries by Bar Counsel seeking his cooperation in the investigation, and ignored an order of the Board compelling him to respond to Bar Counsel's inquiries." 741 A.2d at 1062. Thus, in determining whether to impose a fitness requirement in cases involving violation of rules 8.4(d) and XI, § 2(b)(3), our focus has been "upon the egregiousness of the attorneys' deliberate disregard for the disciplinary process." *Delaney, supra,* 697 A.2d at 1214.

### (b) *Level of Egregiousness*

■ In this case, the Board concluded that respondent's conduct was not so egregious as to warrant the imposition of a fitness requirement. Specifically, the Board was persuaded by respondent's level of cooperation in the proceedings, including his general denial of the charges, participation in the hearing and legitimate objections to Bar Counsel's "interrogatory-like questions." Thus, respondent's conduct differed from cases where an egregious disregard of the system was found, thereby warranting a fitness requirement. *See Giles, supra,* 741 A.2d at 1062 (fitness requirement imposed where attorney repeatedly and deliberately failed to respond to Bar Counsel's inquiries and disregarded the Board's order); *Wright, supra,* 702 A.2d at 1257 (holding that "[r]espondent's failure to participate at any stage of the disciplinary process reflects an egregious disregard for his obligations within the disciplinary system ... [and] is an aggra-

---

9. In *Delaney,* four of the nine members of the Board, while recommending a thirty-day suspension and the requirement of responses to

Bar Counsel, would not have imposed the requirement of a showing of fitness. *Delaney, supra,* 697 A.2d at 1213.

vating factor for purposes of arriving at a sanction"); *Delaney, supra,* 697 A.2d at 1213–14 (fitness requirement imposed where attorney failed to respond to Bar Counsel's letters, motion, complaint or participate in the hearing and evaded service); *Lockie, supra,* 649 A.2d at 547 (deliberate and repeated disregard of Bar Counsel's inquiries and Board's order preventing completion of investigation of two serious charges warranted proof of fitness to resume practice).

The Board's recommended sanction, which excludes a fitness showing before reinstatement, is consistent with the discipline in cases where the conduct was less egregious than the cases in which the requirement was imposed. *See In re Beller,* 802 A.2d 340 (D.C.2002) (thirty-day suspension imposed for counsel's failure to respond to repeated inquiries from Bar Counsel and the Board regarding three complaints with reinstatement conditioned on cooperation with Bar Counsel in the cases); *In re Beaman,* 775 A.2d 1063 (D.C. 2001) (thirty-day suspension for counsel's conceded failure to respond to inquiries from Bar Counsel and orders of the Board); *In re Nielsen,* 768 A.2d 41 (D.C. 2001) (public censure for violations of D.C. R. Prof. Conduct 8.4(d) and D.C. Bar R. XI, § 2(b)(3) for failure to respond timely to the requests of Bar Counsel and the Board); *In re Lilly,* 699 A.2d 1135 (D.C. 1997) (thirty-day suspension because counsel ignored repeatedly Bar Counsel's requests for information and a Board order, with reinstatement conditioned upon full compliance with Bar Counsel's request for information).

We agree with the Board that respondent's conduct did not evidence the level of egregiousness warranting a fitness requirement, and consistent with our deferential standard, we see no reason not to defer to its unanimously recommended sanction. *See Steele, supra,* 630 A.2d at 199 (This court will adopt the Board's recommended sanction "'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'") (quoting D.C. Bar R. XI, § 9(g) (1992)) (other citations omitted). Respondent's initial response to Bar Counsel, subsequent participation in the disciplinary hearing where he testified, meeting with Assistant Bar Counsel and production of some documents and acknowledgment of misconduct distinguish this case from those in which a fitness requirement has been imposed. As we have recognized, the imposition of a fitness requirement operates to increase the length of the suspension. *In re Smith,* 649 A.2d 299, 300 (D.C.1994). Although respondent is not without fault during the proceedings, his conduct is not so egregious as to indicate a need for a fitness showing with its inevitable prolongation of the suspension.

### (c) *Claimed Psychological Need for Fitness Requirement*

Bar Counsel argues for the first time in this court that respondent should be required to show fitness before reinstatement because of his "psychological/emotional/mental state." The Board argues that, having failed to present the point to the Board, Bar Counsel has waived the argument. Alternatively, the Board contends that the record does not support a finding that respondent has psychological or emotional problems warranting a showing of fitness for reinstatement. Rather, the Board states that the evidence is "more fairly characterized as [respondent's] acknowledgment of the misconduct and remorse, factors appropriately considered in mitigation, not aggravation, of sanction."

■ We have held consistently that an attorney who fails to present an issue to the Board waives it and cannot present it for the first time to this court. *In re Holdmann,* 834 A.2d 887, 889 (D.C.2003) (citing *In re Abrams,* 689 A.2d 6, 9 (D.C.), cert denied, 521 U.S. 1121, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997); *In re Ray,* 675 A.2d 1381, 1386 (D.C.1996); *In re Williams,* 464 A.2d 115, 118 (D.C.1983)) (other citation omitted). In *Holdmann,* respondent argued for the first time before this court that public censure should not be imposed as reciprocal discipline because he agreed to private reprimand without an admission of the facts underlying the conceded disciplinary violations. *Id.* This court held that Holdmann had "waived the issue by not presenting it to the Board." *Id.* Presentation of an issue in the first instance to the Hearing Committee and the Board provides an opportunity for a full development of the record. Unless Bar Counsel is held to the same requirement, respondents would be denied notice of Bar Counsel's claim and an opportunity to meet it at a meaningful time.

In *Holdmann,* however, this court made clear that since the final decision lies with the court, it can relieve a party of the waiver, although it declined to do so in that case. *Id.* at 890. Similarly, there is nothing in this record to indicate that relief from the waiver is warranted. In any event, as the Board points out, the scant testimony upon which Bar Counsel relies for a fitness recommendation on this ground is "more fairly characterized as an acknowledgment of the misconduct and re-

morse, factors appropriately considered in mitigation, not aggravation, of sanction." [10] *See Dunietz, supra,* 687 A.2d at 212 (holding concession of misconduct and remorse constitute mitigation evidence).

Bar Counsel cites *Steele, supra,* 630 A.2d at 196, as support for the proposition that a possible psychological inability to comply with ethical obligations requires a showing of fitness for reinstatement even when the Board disagrees. *Steele* is distinguishable. In that case, we imposed a fitness requirement where the attorney neglected a legal matter, failed to cooperate with Bar Counsel and acknowledged "unidentified personal problems that adversely affected her emotional stability and caused her to abandon a client's case." *Id.* at 201. The attorney stated in a letter to Bar Counsel that she had become "more emotionally stable," but left unanswered the question "whether she is sufficiently stable to practice law." *Id.* Thus, the attorney in *Steele* placed in question her continued fitness to resume practice, and this court found it necessary to impose a fitness requirement to assure that " '[her] resumption of the practice of law [would] not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.' " *Id.* (quoting *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985)).

In contrast to the attorney in *Steele,* respondent is not before the court for neglect of a client matter, nor do the facts of record disclose a history of personal problems leading to emotional instability or raise questions as to respondent's present

10. Essentially, Bar Counsel cites as support for the recommendation respondent's testimony regarding his "psychological outlook toward the situation," his inability "to deal with it appropriately" and his decision "to just submit, and ... basically suffer the consequences, be disciplined." Bar Counsel also points out that respondent also cried while testifying and did not take further steps to obtain appointed counsel after the denial of his initial motion for appointment of counsel. We agree with the Board that this evidence is insufficient to show that respondent suffers from a psychological and emotional condition that suggests the need for a showing of fitness.

emotional stability. While respondent did not cooperate with Bar Counsel's investigation, conduct for which he is being disciplined, he did respond to Bar Counsel's initial inquiry, and he appeared at the hearing and represented himself *pro se.* We agree with the Board that the circumstances do not provide grounds for imposing a fitness requirement in a case of this type. *See In re Steinberg,* 761 A.2d 279, 284 (D.C.2000) (holding that an attorney's consultations with a psychiatrist for issues related to marital stress "do not suggest the mental instability and lack of reliability that led to the imposition of fitness requirement in [*Steele, supra,* 630 A.2d at 201]").[11]

### 3. *The Board's Recommended Conditions for Reinstatement*

■ The Board concluded that respondent's reinstatement should be conditioned on his compliance with Bar Counsel's sub-

poena *duces tecum* and the order of this court enforcing it, the authority for which is established under D.C. Bar R. XI, § 18(d). However, the Board declined to recommend that respondent's reinstatement be conditioned on responding to the six sets of questions set forth in Bar Counsel's letter of May 19, 1998.[12] The Board gave the following reasons for its decision: (1) most of the information could be readily obtained from the documents covered by Bar Counsel's subpoena *duces tecum* (*i.e.,* questions 1 and portions of questions 4 and 5); (2) there is no provision for discovery by way of interrogatories to a respondent as propounded by Bar Counsel; (3) respondent's Fifth Amendment privilege protects him from disclosure of some of the information in this quasi-criminal proceeding; (4) some of the questions are overly broad, vague and confusing, and call for legal conclusions (*e.g.,* questions 4, 5

---

**11.** Steinberg was suspended from the practice of law for thirty days for violations of D.C. R. Prof. Conduct 8.4(d) (conduct that seriously interferes with the administration of justice) and D.C. Bar R. XI, § 2(b)(3) (failing to comply with orders of the Board). *Steinberg, supra,* 761 A.2d at 281. Steinberg could not explain his failure to comply with the disciplinary rules, except that it "was a subconscious effort of avoidance," ... and he "had a mental block as to dealing with the two complaints." *Id.* at 284. Apparently, he had no problem handling his clients' cases at the same time, although he consulted with a psychiatrist for issues related to his marriage and was diagnosed with attention deficit disorder. *Id.* This court imposed the suspension without a fitness showing for reinstatement. *Id.*

**12.** The questions propounded in Bar Counsel's letter were as follows:

(1) Did you request [sic] at any time represent British Gary and/or Harold O. Butler? If so, explain in detail including time periods, the matters and basis of representation[.]

(2) What were the circumstances of the conveyance of property by Harold O. Butler

to Roland T. Butler and British Gary? Did you prepare the deed that you notarized? Was compensation paid to Harold Butler by Roland Butler and/or British Gary? Who was your client in connection with this transaction? Were you compensated? By whom? Please explain in detail including time periods of representation.

(3) Was Ms. Gary in the room to witness the execution of the deed? If not, then why did you prepare the deed to state such?

(4) What were the circumstances of the $7500 mortgage mentioned in the Report of the Auditor–Master on page 6, footnote 2? Who were the parties to this transaction, when did it take place, and who authorized the transaction? Please explain in detail.

(5) What were the circumstances of the "second trust to Mortgage Savers, Inc.; ... dated September 1, 1989?" Who were the parties to this transaction, when did it take place and who authorized the transaction? Why was there a delay in recording the second trust? Please explain in detail.

(6) Please explain your conduct in connection with the $7500 mortgage and the second trust in light of the D.C. Rules of Professional Conduct in particular Rules 1.7(b)(4) and 1.8(a).

and 6); and (5) in this type of proceeding, where Bar Counsel has the burden of proof by clear and convincing evidence, a respondent who has filed a general denial should not be obligated to respond to vague and overly broad questions that require him or her to make Bar Counsel's case. Bar Counsel challenges the Board's conclusions and asserts that an attorney should be able to explain his conduct in light of the disciplinary rules.[13]

"An attorney under investigation has an obligation to respond to Bar Counsel's written inquiries in the conduct of an investigation, subject to constitutional limitations." D.C. Bar R. XI, § 8(a). Under the Board's rules implementing this inquiry rule, after Bar Counsel sends notice to the attorney that a formal investigation into his or her conduct has been docketed, along with a copy of the complaint or other document prompting the investigation, respondent is required to respond by "set[ting] forth [his or her] position with respect to the allegations contained in the complaint ...." Board Rules 2.7 & 2.8. Consistent with Rule XI, § 8(a), the Board's implementing rules provide that "Bar Counsel may request ... respondent ... to provide information concerning the matters under investigation...." Board Rule 2.9. If respondent does not respond, then Bar Counsel may request an appropriate order from the Board's Chair, to whom the Board has delegated the authority to decide the issue. Board Rule 2.10. The Board does not consider this procedure to be the equivalent of a formal discovery process, permitting interrogatories to be propounded by Bar Counsel to an attorney under investigation.[14]

■ Generally, "[t]he right to discovery stems from statutes or court rules providing for discovery." *In re Herndon,* 596 A.2d 592, 594 (D.C.1991) (citations omitted). However, the only Bar rule providing explicitly for discovery addresses the right of the respondent to reasonable discovery. *See* D.C. Bar R. XI, § 8(f);[15] *see*

---

**13.** Bar Counsel also argues that respondent waived his right to object to the questions or assert his Fifth Amendment privilege by failing to object when Bar Counsel filed the motion to compel responses. As previously noted, an attorney who fails to present an issue to the Board waives it and cannot present it for the first time in court. *Holdmann, supra,* 834 A.2d at 889 (citations omitted). Here, the Board reconsidered the order compelling responses entered by its then vice-chair, and we find no basis to conclude that it did not have authority to do so. Therefore, this is not a case in which the Board did not have an opportunity to consider the issue in the first instance. Moreover, this court has stated that it can relieve a party of waiver in an appropriate case. *Id.* at 890. The Board argues that this is an appropriate case for relief from any waiver because "[i]n a case of first impression, where there is a question whether a respondent has an obligation to respond to Bar Counsel's interrogatory-like questions, serious problems with the questions themselves and further uncertainty as to how an objection to the questions should be raised, application of the waiver doctrine would operate as a serious miscarriage of justice under the plain error standard." The concurring/dissenting members of the Board observed similarly that "[t]here is room to doubt in the Board rules and in Rule XI as to how an attorney is supposed to register an objection to interrogatories from Bar Counsel." We agree with the Board's unanimous view that this is an appropriate case for relief from any waiver.

**14.** The Board so stated in its majority report, and the two dissenting members agree that Rule XI and the Board's rules do not provide for discovery from a respondent and that D.C. Bar Rule XI "does not necessarily establish that Bar Counsel is entitled to take discovery from an attorney by propounding interrogatories."

**15.** D.C. Bar R. XI, § 8(f) provides:

The attorney shall have the right to reasonable discovery in accordance with rules promulgated by the Board. Rulings with

*generally Herndon,* 596 A.2d at 594–95 (addressing the extent to which reasonable discovery had been provided under discovery rules promulgated by the Board under the authority of Bar Rule XI, § 8(f)). To implement this discovery provision, the Board adopted Rule 3.1 (governing how respondents can gain access to material in Bar Counsel's files and Rule 3.2 (providing a mechanism for respondents to obtain discovery from non-parties by deposition or by production of documents)). Again, these rules do not provide for discovery by Bar Counsel from a respondent in a disciplinary proceeding.

This court has held that "'procedural requirements analogous to those of other 'contested cases' must be observed in attorney disciplinary cases.'" *Herndon, supra,* 596 A.2d at 594 (quoting *In re Thorup,* 432 A.2d 1221, 1225 (D.C.1981)) (other citation omitted). However, we have recognized that parties are not generally entitled to discovery as a matter of constitutional right in such proceedings. *See id.* at 595 (citing *Silverman v. Commodity Futures Trading Comm'n,* 549 F.2d 28, 33

(7th Cir.1977)) (other citations omitted). Neither the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code § 2–509 (2004), nor its federal counterpart, the Administrative Procedure Act, 5 U.S.C. §§ 551–559 (2004), provide for discovery.

 In this jurisdiction, the rules of discovery are much more restricted for the prosecutor in a criminal proceeding.[16] *See Herndon, supra,* 596 A.2d at 596 (citing Super. Ct.Crim. R. 16 & 17); *see also Morris v. United States,* 622 A.2d 1116, 1124–25 (D.C.), *cert. denied* 510 U.S. 899, 114 S.Ct. 270, 126 L.Ed.2d 221 (1993) ("Discovery in criminal trials, especially discovery of the defense case, is very limited because of the adversarial nature of criminal prosecutions."). In adopting rules permitting discovery by a prosecutor in a criminal proceeding, courts and legislatures have proceeded with caution because of the Fifth Amendment privilege against self-incrimination, the Sixth Amendment's guarantee of effective assistance of counsel, the attorney-client privilege, and the attorney work product doctrine.[17] *Middle-*

respect to such discovery proceedings shall be made by the Chairperson of the Hearing Committee to which the matter has been assigned for hearing or by the Chairperson of the Board. Objections to such rulings shall be preserved and may be raised upon appeal to the Board from the final action of the Hearing Committee. No interlocutory appeals shall be permitted.

16. While the applicable rule mandates the prosecutor's disclosure of certain documents upon a defendant's request, *see* Super. Ct. Crim. R. 16(a)(1)(A)–(E), the government's right to disclosure of documents, tangible objects and tests arises only if the defendant has made a similar request of the government. *See* Super. Ct.Crim. R. 16(b)(1)(A) & (B). Although a defendant is required to disclose a written summary of the testimony of any expert a defendant intends to use consonant with a defendant's privilege against self-incrimination and right to counsel, the follow-

ing are not subject to disclosure: "reports memoranda, or other internal defense documents made by the defendant, or the defendant's attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by prospective government or defense witnesses to the defendant, the defendant's agents or attorneys." Super. Ct.Crim. R. 16(b)(2).

17. "The work-product doctrine ... creates a 'qualified privilege' for materials prepared by an attorney (or attorney's agent) in anticipation of trial." *Parks v. United States,* 451 A.2d 591, 607 (D.C.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983) (quoting *United States v. Nobles,* 422 U.S. 225, 237–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)) (other citation omitted); *In re Public Defender Service,* 831 A.2d 890, 911 (D.C. 2003) (the work product doctrine protects from disclosure the mental processes of an

*ton v. United States,* 401 A.2d 109, 115 (D.C.1979) (concluding that it was error for the trial court to compel disclosure of evidence gathered by the defense investigator absent statutory or other authority).

 While sensitive to Bar Counsel's need to gather information, the Board determined that it should not impose a reinstatement requirement that extended beyond the confines of the existing procedure, *i.e.,* procedures that do not provide for formal discovery and that do not permit Bar Counsel to propound interrogatory-like questions to a respondent.[18] The Board questions the propriety of compelling a respondent to answer what are essentially interrogatories in a disciplinary case, which is "quasi-criminal" in nature.[19] *See Williams, supra,* 464 A.2d at 118–19 (noting that disciplinary proceedings are quasi-criminal and that attorneys subject to them are entitled to procedural due process safeguards). The Board also expressed concern that, without the benefit of counsel at the investigative stage, a respondent might provide incomplete or inaccurate information in an effort to cooperate that could later form the basis for an increased sanction. Given the nature of the proceeding and the competing interests, we agree that interrogatories, as provided for under civil court rules, should not be incorporated into the disciplinary process without promulgation of rules governing their use.

 That is not to say that attorneys under investigation have no obligation to respond to Bar Counsel's inquiries, a concern raised by Bar Counsel. On the contrary, as previously stated, Rule XI, § 8(a) requires an attorney under investigation "to respond to Bar Counsel's written inquiries, ... subject to constitutional limitations." *See In re Lenoir,* 585 A.2d 771, 780 (D.C.1991); *In re Jones,* 521 A.2d 1119 (D.C.1986); *Haupt, supra,* 444 A.2d at 317. The Board has not concluded otherwise; it has simply held that some of Bar Counsel's broad questions exceeded the scope of written inquiries contemplated by Rule XI, § 8(a), the information would be available through documents to be produced, or the questions were the proper subject of challenge on constitutional grounds. Even assuming that the inquiries contemplated under Rule XI, § 8(a) were tantamount to the interrogatories allowed under Super. Ct. Civ. R. 26 (general provisions governing discovery, including written interrogatories), such discovery would be subject to the limitation of reasonableness under the circumstances. *See Herndon, supra,* 596 A.2d at 595 (holding that where the right to discovery arises, it is satisfied by providing discovery that is reasonable under the circumstances). Even under the liberal rules of discovery

---

attorney as reflected in documents prepared by the attorney or his or her agents in anticipation of litigation) (citations omitted).

18. The vice-chair of the Board granted Bar Counsel's motion to compel a response to the questions at issue. Since this was not the action of the full Board, the Board reconsidered this action after Bar Counsel brought charges based upon respondent's failure to comply with the order compelling responses. Observing that respondent had claimed before the Hearing Committee his Fifth Amendment privilege with respect to some of Bar Counsel's questions and that the Hearing Commit-

tee had not addressed the issue, the Board considered the issue.

19. The two members of the Board who filed a concurring/dissenting statement took the same position, stating, in part, "the quasi-penal nature of lawyer discipline proceedings, and the fact that Bar Counsel is obligated to prove its case for discipline by clear and convincing evidence, cast doubt on the notion that Bar Counsel may compel an attorney to provide what would be, in effect, a testimonial response in the nature of an answer to an interrogatory."

applicable in civil proceedings,[20] "the trial court may limit discovery of relevant matter in some instances upon its own initiative or pursuant to a protective order such as when 'the discovery is unduly burdensome or expensive taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation." *Id.* (citing Super. Ct. Civ. R. 26(b)(1)). In deciding limitations appropriate for discovery in a civil proceeding, a court has substantial discretion, and its decision will not be disturbed on appeal absent an abuse of discretion. *Mampe v. Ayerst Labs.*, 548 A.2d 798, 803–04 (D.C.1988). Under that standard, we discern no abuse of discretion in the Board's determination.

▮ The Board determined that the information requested in Bar Counsel's question 2 and parts of questions 4 and 5 could be readily obtained from the documents covered in Bar Counsel's subpoena *duces tecum*, enforced by the court's order.[21] Bar Counsel contends that whether these inquiries will be answered by the documents respondent is required to produce is speculative. It was not unreasonable for the Board to conclude that the nature and dates of respondent's representation of British Gary and/or Harold O. Butler (including the time periods and basis) and names of the parties to the mortgage and second trust transaction and dates, as requested by Bar Counsel, would be revealed in the related documents, which are the subject of the subpoena.[22] *See* Super. Ct. Civ. R. 26(b)(1) (authorizing limitations of discovery where information can be obtained from some other more convenient source or the party has had an opportunity to obtain the information sought). The Board determined that questions 4, 5 and 6 were overly broad in requesting respondent "to explain in detail" his conduct or to do so in light of the disciplinary rules, particularly after respondent had interposed a general denial. Even under the standard for liberal civil discovery, the Board acted within its discretion in declining, on reconsideration, to compel answers to questions 4, 5 and 6 on the grounds that they were overly broad, vague, burdensome and called for legal conclusions. *See Snyder v. Maryland Cas. Co.*, 187 A.2d 894, 895–96 (D.C.1963) (finding no abuse of discretion in the trial court's refusal to compel responses to interrogatories that were unreasonably burdensome and called for opinions and conclusions); *see also* Super. Ct. Civ. R. 26(b)(1)(a)(iii).

▮ Finally, the Board found that "[t]o the extent that the questions asked by Bar Counsel would require respondent to explain actions that the Auditor–Master had described as 'a fraudulent conveyance,' [r]espondent had a right to interpose an objection based on constitutional limitations and decline to provide a response." The privilege against self-incrimination can be asserted in any proceeding, including

---

**20.** In general, a party to a civil proceeding may obtain discovery of any relevant information, not privileged, or any information "reasonably calculated to lead to the discovery of admissible evidence." Super. Ct. Civ. R. 26(b)(1).

**21.** *See* note 11, *supra.*

**22.** The subpoena *duces tecum* required production of "(A) [a]ll documents related to the $7,500.00 mortgage loan being held against the estate of Harold O. Butler[,] (B) [a]ll documents related to the trust to Mortgage Savers, Inc., dated September 1, 1989, which is being held against the estate of Harold O. Butler[, and] (C) [a]ny and all retainer agreements, records of compensation, billing records, and copies of checks received in compensation from Harold O. Butler, Roland Butler and/or British Gary[.]"

administrative, investigatory or adjudicatory ones. *Carter v. United States*, 684 A.2d 331, 338 (D.C.1996) (quoting *Kastigar v. United States*, 406 U.S. 441, 443–45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). Bar Counsel argues that respondent did not demonstrate that he will incur criminal liability. Fraudulent conduct may constitute a crime under our criminal statutes. *See* D.C.Code § 22–3221 (2001); *see also Beard v. South Main Bank*, 615 A.2d 203, 210 (D.C.1992) (recognizing that potential witnesses in a civil proceeding would likely have a Fifth Amendment privilege against self-incrimination for allegedly fraudulent conduct in Texas or the District of Columbia) (citations omitted). "The Fifth Amendment 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *Littlejohn v. United States*, 705 A.2d 1077, 1083 (D.C.1997) (quoting *Kastigar*, 406 U.S. at 445, 92 S.Ct. 1653). Given the allegations in this case, we find no error in the Board's decision recognizing respondent's right to assert his Fifth Amendment privilege and therefore adopt the Board's recommendation against requiring an answer to questions that implicated it as a condition of reinstatement.

### Conclusion

In summary, because of the disagreement between the Board, the Hearing Committee and Bar Counsel. on the sanction, specifically as it relates to the terms of reinstatement, we have examined carefully their positions in light of the record in this case and in prior cases. Ultimately, we agree with the Board's analysis and adopt its recommended sanction for the reasons expressed in this opinion. The recommendation is consistent with the sanctions imposed for similar misconduct and satisfies the purposes of discipline of protecting the courts, the profession and the public.

Therefore, Paris A. Artis is hereby suspended from the practice of law for thirty days, effective fifteen days after the date of this order with the requirement that he comply with Bar Counsel's subpoena *duces tecum* as a condition of reinstatement. Respondent's attention is directed to the requirement of D.C. Bar R. XI, § 14 and the consequences of noncompliance with these requirements, as set forth in D.C. Bar R. XI, § 16(c).

*So ordered.*

SCHWELB, Associate Judge, concurring:

I agree that we must accord considerable deference to the carefully considered recommendation of the Board on Professional Responsibility, and I therefore agree with the sanction imposed by the court. I also agree with much of the opinion of the court, and especially with its measured approach to the issue of discovery in disciplinary cases. I write separately, however, because I have some concerns regarding the court's treatment of the question whether Mr. Artis and Bar Counsel have adequately preserved certain contentions.

The Hearing Committee recommended that Mr. Artis be suspended from practice for thirty days, and that he be required, *inter alia*, to demonstrate his fitness to practice as a condition of reinstatement. Mr. Artis filed no exceptions to this recommendation, and even when the Board came to his rescue, he failed to file a brief in this court. In other words, Mr. Artis did not simply neglect to preserve an issue; his inaction was analogous to failure to file an appeal. Under the circumstances, giving Mr. Artis every possible benefit of any conceivable doubt, I should think that he is entitled, at best, to review under "the dis-

ciplinary counterpart of [the] plain error [standard]." *In re Holdmann*, 834 A.2d 887, 889 n. 3 (D.C.2003). I question whether Mr. Artis can satisfy either prong of that standard with respect to the requirement that he demonstrate fitness; that requirement is not "obviously" wrong, nor would it constitute a serious miscarriage of justice. *Id.* at 889–90 n. 3. In fact, Mr. Artis' overall performance in this matter raises at least a reasonable question whether we should have confidence that he should be representing clients in the immediate future. One would expect much more from an attorney who was admitted to our Bar in 1972. I recognize that the members of the Board did not duck the preservation issue but considered it very carefully, and I am not prepared to reject the Board's recommendation. Nevertheless, I must confess to a measure of discomfort over our treating Mr. Artis' failure to file exceptions, for purposes of this case, as if it had not happened.

My disquiet in this regard is reinforced by the court's treatment of Bar Counsel with respect to an argument made for the first time in this court. Before the Board, Bar Counsel claimed that Mr. Artis should be required to prove fitness as a condition of reinstatement, but she did not argue that this requirement should be imposed in part on the basis of his "psychological/emotional/mental status." Bar Counsel did make this additional argument before this court. In other words, Bar Counsel raised a new argument in support of a previously presented, and thus preserved, claim. But "once a . . . claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments made below." *West v. United States*, 710 A.2d 866, 868 n. 3 (D.C. 1998) (quoting *Yee v. Escondido*, 503 U.S.

519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)). Under these circumstances, I believe that Bar Counsel preserved her right to base her argument, in part, on Mr. Artis' mental and emotional state. By any measure, Bar Counsel preserved her claim far more diligently than Mr. Artis preserved (or, more precisely, failed to preserve) his.

Having said all of the foregoing, I am still prepared to defer to the Board's carefully considered recommendation and to express agreement with much of the court's opinion. Nevertheless, at least for me, it is quite a close call.