143 P.3d 1262

**Myles S. BREINER, Petitioner,**

v.

**Magali V. SUNDERLAND, in her capacity as Special Assistant Disciplinary Counsel, and the Office of Disciplinary Counsel, Respondents.**

No. 27889.

Supreme Court of Hawai'i.

Sept. 22, 2006.

MOON, C.J., LEVINSON, NAKAYAMA, Intermediate Court of Appeals Judge WATANABE, in place of ACOBA, J., recused, and Circuit Judge HARA, in place of DUFFY, J., recused.

PER CURIAM.

Attorney Myles S. Breiner petitions this court for a writ of prohibition or other relief with regard to disciplinary investigations being conducted by Special Assistant Disciplinary Counsel, Respondent Magali V. Sunderland, on behalf of the Office of Disciplinary Counsel (ODC). We grant the petition and order that:

(1) Disciplinary Counsel shall forthwith remove Sunderland from further participation in any investigation involving Breiner;

(2) Disciplinary Counsel shall assign other assistant disciplinary counsel, within the time specified *infra,* to review the files and make recommendations for ODC Case Nos. 6889 and 8117, as more specifically set out below;

(3) Disciplinary Counsel shall, in light of this opinion and within a reasonable time hereafter, review the propriety or appropriateness of Sunderland's claims for compensation with regard to the investigations of ODC Case Nos. 6889 and 8117; and

(4) Disciplinary Counsel and the Disciplinary Board shall propose, within 180 days after the date of this opinion, Disciplinary Board and/or Supreme Court rules concerning (a) the scope of disciplinary investigations, including, but not limited to, subject matters that may permissibly be investigated or discovered in relation to a complaint or grievance and (b) the means by which an attorney who is the subject of a disciplinary investigation or proceeding may seek protective orders from the Disciplinary Board and this court.

Eric A. Seitz, Lawrence I. Kawasaki, and Ronald N.W. Kim, Honolulu, for petitioner Myles S. Breiner.

Russell A. Suzuki, Deputy Attorney General, for Respondents Magali V. Sunderland and Office of Disciplinary Counsel.

## I. *RELEVANT FACTS*

Breiner is the subject of two attorney discipline grievances. Sunderland is the Special Assistant Disciplinary Counsel assigned to investigate both grievances. The grievances

and the course of each investigation are summarized below.

### A. *Martinelli Investigation (ODC Case No. 6889)*

In a letter received at the ODC on March 10, 2000, Robert Martinelli stated he was indicted for a federal drug offense in August 1996, and Breiner was appointed to represent him. According to Martinelli, Breiner advised that it would be expensive to fight the case, the court did not pay enough, and Breiner said he would provide a better defense if Martinelli privately retained him. Martinelli related that he was then incarcerated and agreed to have his girlfriend meet Breiner and give Breiner a $5,000 check. Breiner took the money to handle Martinelli's case and "said words to the effect of 'okay, I'll use this for investigating your case and I'll stay on as your court-appointed attorney, but don't tell anyone about this.' " Martinelli said there was no retainer agreement and that Breiner "kept saying he needed more money ... while he was still court-appointed." Martinelli complained that he wanted his money back.

On March 10, 2000, Assistant Disciplinary Counsel Brian Means copied Martinelli's letter to Breiner and asked Breiner to respond. Breiner responded by letter dated March 15, 2000.[1] Breiner acknowledged that he was appointed to represent Martinelli in the federal case. Breiner explained that, in response to questions from Martinelli, Breiner had told Martinelli that it made no difference whether Breiner was court-appointed or privately retained. According to Breiner, Martinelli insisted Breiner would do a better job if he were privately retained, a common misconception among criminal defendants. In sum, Breiner said he acquiesced to Martinelli's request and took $5,000 as a fee. Breiner deposited the check into his clients' trust account on September 23, 1996.

According to information provided for this proceeding, a plea agreement resulted in the dismissal of the Martinelli indictment on February 27, 1997. On March 4, 1997,

Breiner transferred the $5,000 from his clients' trust account into his business account. Breiner did not seek payment from the federal government for his services as court-appointed counsel.

Sometime after Breiner submitted his March 15, 2000 written response to Martinelli's letter, Sunderland took over the investigation. By letter dated November 20, 2003, Sunderland scheduled a meeting with Breiner for November 26, 2003. Sunderland required that Breiner bring with him financial records related to Martinelli and Martinelli's complete, original file. Breiner asserts he and his attorney met with Sunderland and produced Breiner's financial records.

Twenty-six months later, on January 27, 2006, Sunderland wrote to Breiner's attorney and asked for Breiner's responses to twenty-six questions regarding details about Breiner's actions in the Martinelli case, whether Breiner had complied with the Hawai'i Rules of Professional Conduct (HRPC), whether Breiner admitted any ethical violations, and whether Breiner claimed any mitigating factors.

To date, the ODC has neither formally charged Breiner nor dismissed the Martinelli grievance.

### B. *Barut Investigation (ODC Case No. 8117)*

By letter dated June 25, 2004, Sunderland informed Breiner that Vanessa Barut had "filed" a "complaint" with ODC concerning "fees allegedly owed." A copy of Barut's complaint does not appear to have been provided with Sunderland's letter to Breiner, and it has not been provided to this court. Sunderland's letter asked Breiner to "provide ... a complete copy of the *original file* for Ms. Barut." (Emphases in the original.)

Sunderland's June 25, 2004 letter required Breiner, among other things, to identify accounts where he deposited money received from Barut and to submit: (1) copies of deposit slips used to deposit Barut's funds; (2) cash receipt and disbursement journals;

---

**1.** With regard to the investigations discussed herein, Breiner has at times acted *pro se* and at other times has been represented by attorneys David J. Gierlach, David F. Klein, or Eric A. Seitz.

(3) a subsidiary ledger; (4) any retainer or compensation agreement; (5) billing statements; (6) records of payments to attorneys, investigators, or others; (7) check books; (8) check stubs; (9) bank statements; (10) pre-numbered cancelled checks; (11) monthly trust account reconciliations; and (12) all records showing a listing of client trust accounts, including names and account balances from 1996. In addition, the letter required Breiner to provide copies of all records related to Barut's case. Breiner responded by letter dated July 7, 2004. Breiner's response identified the nature of the federal criminal charges against Barut, the circumstances under which Breiner was retained, Breiner's understanding of his fee agreement with Barut, the results of the case, subsequent agreements with regard to the application of a posted bond to his fee, and the circumstances of Breiner's withdrawal from the case. Breiner's response also included copies of documents referred to in the letter. On September 10, 2004, Breiner wrote to ODC, seeking guidance about how to handle a check from the United States District Court in the amount of the disputed attorney's fees. The check represented proceeds from bail deposited by Breiner for Barut in that court. On September 17, 2004, an Assistant Disciplinary Counsel advised Breiner that the funds should be placed in Breiner's "client trust account pending resolution of the fee dispute" and noted that the fee dispute might be resolved by interpleader in the United States District Court.

By letter dated November 5, 2004, Sunderland sought detailed answers to seventeen additional questions related to Breiner's representation of Barut, many of which had nothing to do with Barut's fee complaint. Breiner's January 12, 2005 response acknowledged a flat fee retainer agreement but stated that Barut had offered to pay additional money when she realized the amount of work needed. Breiner's January 12, 2005 letter also set out a response to each of Sunderland's seventeen enumerated questions.

On March 22, 2005, Sunderland asked Breiner to respond to twenty-four additional questions. Breiner responded on May 19, 2005, and, thereafter, Sunderland sought additional information by telephone on June 23, 2005. Breiner responded on August 26, 2005.

On October 10, 2005, Sunderland sought responses to twenty-nine additional questions. Breiner responded to each question by letter dated January 19, 2006.

On January 26, 2006, Sunderland sent to Breiner one hundred additional questions, many with multiple sub-questions, and, on February 3, 2006, Sunderland forwarded two more questions.

To date, ODC has neither formally charged Breiner nor dismissed the Barut grievance.

## C. *Breiner's attorney seeks supervision*

On March 20, 2006, Breiner's attorney wrote to the Chief Disciplinary Counsel, Carole Richelieu, complaining of Sunderland's "oppressive and overreaching behaviors." Breiner's attorney demanded that Richelieu "rein in Ms. Sunderland and establish written guidelines for the proper scope of any 'investigations[,]' ... clear limitations[,] both in terms of time periods and subject matters that she will be allowed to inquire into[,] and a review procedure for attorneys who may object to and be aggrieved by her overly zealous conduct."

On April 13, 2006, Richelieu responded that Sunderland's "requests for information seem appropriate, focused, and necessary to conclude complex investigations into serious allegations of misconduct by clients[.]"

## II.  *REVIEW BY WRIT OF MANDAMUS OR PROHIBITION*

On April 17, 2006, Breiner petitioned for a writ of prohibition, naming Sunderland and the ODC as respondents. Breiner asks this court to:

(1) restrict Sunderland's conduct in the two ongoing ODC investigations and all future investigations involving Breiner;

(2) order the investigation to proceed in a timely and reasonable manner with limitations for time periods and subject matters; and

(3) order ODC to establish written guidelines for the proper scope of the investigations.

On June 7, 2006, this court ordered Sunderland and ODC (Respondents) to answer the petition. Respondents answered on July 6, 2006; Breiner replied on July 18, 2006.

## III. *DISCUSSION*

■ Respondents argue that Breiner's petition should be denied because:

  (A) Breiner cannot establish a clear and indisputable right to relief;

  (B) under the doctrine of primary jurisdiction, this court lacks subject matter jurisdiction;

  (C) Breiner lacks standing to bring this action at this time; and

  (D) existing rules, policies, and procedures already establish guidelines for the scope of investigations and a review procedure.

We reject Respondents' arguments.

■ "The [ODC] and the Disciplinary Board are creatures of this court, created pursuant to the court's inherent and constitutional authority to regulate the practice of law." *In re Disciplinary Board*, 91 Hawai'i 363, 368, 984 P.2d 688, 693 (1999). The ODC and the Board are tasked "to carry out this court's authority to investigate, prosecute, dispose of, or make recommendations about attorney disciplinary matters." *Id.* at 368–69, 984 P.2d at 693–94. As an agent of this court, the ODC can act only within the authority granted by this court, and separation of powers concerns do not require that we give the ODC the kind of deference given to legislatively created administrative agencies. *Cf. Cariglia v. Bar Counsel*, 442 Mass. 372, 813 N.E.2d 498, 503 (2004) (bar counsel's discretion to investigate and prosecute is not subject to the same deference as is given a criminal or regulatory prosecutor in the executive branch).

■ Disciplinary Counsel's duties are owed to the supreme court, and Disciplinary Counsel's powers to investigate disciplinary grievances are granted by court rule. *See* Rules of the Supreme Court of Hawai'i (RSCH) Rules 2.6(b)(2) and 2.7; *In re Disciplinary Board*, 91 Hawai'i at 369, 984 P.2d at 694. RSCH Rule 2.6(b)(2) [2] authorizes Disciplinary Counsel "[t]o investigate all matters involving alleged misconduct[.]" RSCH Rule 2.7(a) [3] outlines procedures for investigating and taking action regarding attorneys against whom grievances have been submitted. Although we prefer that ODC operate under Disciplinary Board supervision without our intervention, we have the responsibility and duty to regulate and direct the actions of the Disciplinary Board and the ODC, and, when a proven need to do so arises, we will not hesitate to exercise our responsibilities and duties. *Cf. In re N.P.*, 361 N.W.2d 386, 392 (Minn.1985) (Although it was "not always clear whether petitioner [was] seeking a writ of prohibition or a writ of mandamus[,]" the

---

**2.** Specifically, RSCH Rule 2.6(b)(2) states in relevant part:

  **2.6. Disciplinary counsel.**

    . . . .

    **(b)** Counsel shall have the power and duty:

    . . . .

    (2) To investigate all matters involving alleged misconduct called to his or her attention whether by complaint or otherwise.

(Bold emphases in original.)

**3.** Specifically, RSCH Rule 2.7(a) states:

  **2.7. Procedure.**

  **(a) Investigation.** All investigations, whether upon complaint or otherwise, shall be conducted under the supervision of Counsel. Upon the conclusion of an investigation, Counsel shall recommend dismissal, informal admonition of the attorney concerned, the institution of non-disciplinary proceedings for minor misconduct, or the institution of formal disciplinary proceedings before a hearing committee or officer. Counsel's recommendation shall be reviewed by one of the two members of the Board assigned for that purpose. If the initial reviewing member of the Board approves Counsel's recommendation, it shall be implemented. If the reviewing member of the Board disapproves Counsel's recommendation, Counsel may request further review by the other reviewing member of the Board. In the event of such second review of Counsel's recommendation, the decision by the second reviewing member of the Board shall be final. The member or members of the Board who review Counsel's recommendation shall be disqualified in any formal disciplinary proceedings in relation to the same alleged misconduct.

court had "original jurisdiction to issue either writ" because the action seeking restraint of the Director of the Lawyers Professional Responsibility Board arose "from the attorney disciplinary process.").

In response to Breiner's petition, Respondents cite to the processes for reviewing reports and recommendations for discipline, set forth in Disciplinary Board (DB) Rules 3(c) and (d) and RSCH Rule 2.7(c) (formal hearing) and (d) (review by Board and Supreme Court), as providing appropriate avenues for review. DB Rule 3 provides in relevant part:

**Initiation of Investigations; Cases in Which Counsel is Disqualified.**

. . . .

(c) **Motion to Disqualify Counsel.** If the respondent moves to disqualify Counsel, the matter shall be heard by the Chairperson of the Board. In the event Counsel is disqualified, the last two sentences of paragraph (b) of this rule apply. [4]

(d) **Complaints Against Board Members or Counsel.** Complaints filed against lawyer members of the Board or Counsel shall be handled in the following manner:

(1) The original complaint shall be immediately forwarded to the Chairperson of the Board for initial review and analysis.

(2) If the Chairperson of the Board determines that the complaint falls outside the jurisdiction of the Board under [RSCH] Rule 2 or that sufficient information is not contained in the complaint to allow a meaningful investigation, the Chairperson of the Board shall promptly notify the complainant that no investiga-

(Bold emphases in original.)

4. The last two sentences of DB Rule 3(b) state: The Chairperson of the Board shall immediately review the matter and, unless he or she concludes that the matter should be summarily dismissed, shall appoint Special Assistant Disciplinary Counsel to discharge the powers and duties of Counsel in the particular matter, including the procedures set forth in paragraph (d)(4) of this rule. Any conclusion by the Chairperson of the Board that the matter should be summarily dismissed shall be promptly communicated by the Chairperson of the Board to the complainant and the respondent without further Board action.

tion will be undertaken or that further information is needed before an investigation may be undertaken

(3) If the Chairperson of the Board determines that the complaint falls within the jurisdiction of the Board under [RSCH] Rule 2[.1 [5]] and that sufficient information is contained in the complaint to allow a meaningful investigation, the Chairperson shall appoint a lawyer member from the list of hearing committee members or officers to conduct the investigation of the complaint.

(4) In investigating the complaint, the hearing committee member or officer appointed by the Chairperson of the Board shall request written and/or verbal input from the complaining party and the party complained against as deemed necessary. Also, the hearing committee member or officer may utilize directly the services of investigators employed at the Office of Disciplinary Counsel (ODC) to conduct interviews and to obtain other information needed to properly evaluate the complaint.

(5) The hearing committee member or officer shall, based on information acquired during the investigation, prepare and forward to the Chairperson of the Board a recommendation concerning the merits of the complaint.

(6) The Chairperson of the Board shall affirm or modify the recommendation of the hearing committee member or officer, or shall remand the matter to the hearing committee member or officer for further investigation.

5. RSCH Rule 2.1, Jurisdiction, states:

Any attorney admitted to practice law in this state and any attorney specially admitted by a court of this state for a particular proceeding is subject to the exclusive disciplinary jurisdiction of the supreme court and the Board hereinafter established.

Nothing herein contained shall be construed to deny to any court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt, nor to prohibit any voluntary bar association from censuring a member or suspending or expelling a member from membership in the association.

(7) The Chairperson of the Board shall, upon affirming or modifying the recommendation of the hearing committee member or officer, promptly notify the parties of the decision.

(8) If the decision of the Chairperson of the Board is that an Informal Admonition should be imposed, the Chairperson shall impose the Admonition in accordance with DB 9.

(9) If the decision of the Chairperson of the Board is that formal disciplinary proceeding should be commenced, the Board shall appoint Special Assistant Disciplinary Counsel to present the case pursuant to [RSCH] Rules 2.7(c) and (d). In addition, where formal disciplinary proceedings are brought against a lawyer member of the Board, other Board members may recuse themselves if appropriate and appointment of ad hoc members of the Board shall, if necessary, be undertaken pursuant to [RSCH] Rule 2.4(c).

(10) If a complaint is filed against the Chairperson of the Board, the Vice Chairperson of the Board (and, upon absence, disability, or disqualification of the Vice Chairperson, the Secretary of the Board) shall undertake the duties of the Chairperson described above.

(11) Upon final completion of the investigation or proceeding, all files in the case shall be forwarded to ODC, which shall maintain a permanent record of the matter in accordance with procedures established by the Board.

(Footnotes added.) DB Rules 3(c) and (d), in the circumstances presented by this petition, are insufficient to curb an abusive or otherwise improper investigation. First, although a motion to disqualify Sunderland under DB Rule 3(c) might have been appropriate, Breiner's attorney has demonstrated that the filing of such a motion would have been futile. Breiner's attorney provided evidence that a previous attempt to seek the Disciplinary Board Chair's review of Sunderland's actions in a disciplinary case involving another attorney was rejected by the Disciplinary Board Chair. In that instance, the Disciplinary Board Chair responded that the "request

to have Ms. Sunderland removed from [the] case [was] misdirected to me (or any other member of the Disciplinary Board). The responsibility for assignment to particular cases lies with Chief Disciplinary Counsel . . . and it is the Chief Disciplinary Counsel's responsibility to remove her . . . if warranted."

Second, although DB Rule 3(d) governs disciplinary complaints about Disciplinary Board members and Disciplinary Counsel, which would include special assistant disciplinary counsel such as Sunderland, such complaints would be treated as a disciplinary complaint and proceed through formal disciplinary proceedings, if warranted. In other words, DB Rule 3(d) does not have the effect of removing an investigating attorney from a case.

■ Respondents' reliance on the formal hearing and review processes set forth in RSCH 2.7(c) and (d) are similarly misplaced. Martinelli's grievance was brought before ODC as early as March 10, 2000, and Barut's grievance was brought before ODC as early as June 4, 2004. Yet the investigations are ongoing, formal petitions have not been filed, hearing officers or committees have not been appointed, hearings have not been conducted, and, given the pace and tenor of the investigations, there is no likelihood that the regular disciplinary avenues of oversight by this court will be available any time soon. We will not allow an attorney to be subjected to abusive investigative tactics while he or she waits for the opportunity to have such tactics reviewed in connection with a report and recommendation for discipline that may never be filed with this court.

In sum, based upon the circumstances of this case, a motion to disqualify clearly would have been futile, Breiner's petition is not a disciplinary complaint, and Breiner has no other avenue by which to seek relief from alleged unprofessional and oppressive investigation tactics. In circumstances where no other avenue of review is available, we will review complaints about ODC by way of petition. The application of mandamus or prohibition standards is particularly appropriate where, as here, there is an allegation regarding the manner in which an ODC in-

vestigation is being undertaken by a Special Assistant Disciplinary Counsel.

■ We fully recognize that an attorney has a duty to cooperate with a disciplinary investigation. *See* HRPC Rule 8.4(d).[6] Sunderland's questions to Breiner, however, require much more than cooperation regarding grievances submitted by Breiner's clients. In fact, Sunderland's questions require Breiner to make admissions, to analyze and apply rules, and to state legal conclusions. *Cf. In re Koryl*, 481 N.E.2d 393, 394 (Ind. 1985) (stating the "duty to cooperate does not, needless to say, require an admission of violation, nor does it preclude the advocacy of a theory of defense which is contradictory to the allegations of misconduct"; although "Respondent's duty to cooperate does require compliance with professional standards[,]" the "Disciplinary Commission cannot use its authority to charge misconduct as a substitute for normal channels of discovery or to force a response which is otherwise permissive"). Sunderland's letter-questions are interrogatories of the worst sort inasmuch as they are onerous and, in a number of instances, improper. Many questions ask Breiner to opine on matters that the ODC appears to be trying to establish and for which it bears the burden of proof by clear and convincing evidence. RSCH Rule 2.7(c). For example, in Sunderland's January 26, 2006 letter to Breiner:

(a) question 32 asks Breiner to "state how [his] ... submission ... complies with HRPC [Rule] 8.4(c) in view of [Barut's] written April 28, 2001 fee agreement";

(b) question 39 asks Breiner how his statements to Barut comply with HRPC Rule 8.4(c); and

(c) question 53 sets out numerous scenarios and asks Breiner multiple times to state or explain how his actions, as set out in the scenarios, complied with various rules. At the same time, Sunderland included parentheticals purportedly stating the judgmental "view" of the ODC.

Some "questions" are offensively imperious. For example, question 49 in the January 26, 2006 letter concludes that Breiner did not answer a question posed by Sunderland in her October 10, 2005 letter and lectures that "[a]dvising this office in 'hindsight' that [an answer] should have been included does not state why it was not included."

■ Other questions exhibit a complete misunderstanding of the rules at best or constitute harassment at worst. For example, questions 4 through 10 of Sunderland's January 27, 2006 letter mischaracterize the purported private fee agreement with Martinelli as a "business transaction with a client," as prohibited by RSCH Rule 1.8, and demands that Breiner analyze his actions in light of the characterization. Obviously, a standard fee agreement between an attorney and his or her client can hardly be said to be the type of prohibited "business transaction" contemplated by Rule 1.8.

Sunderland's questions and comments, in our view, clearly exceed any rule of reasonableness that can be applied to the broad discretion granted for disciplinary investigation. In *In re Artis*, 883 A.2d 85 (D.C.2005), the District of Columbia Court of Appeals agreed "that interrogatories, as provided for under civil court rules, should not be incorporated into the disciplinary process without promulgation of rules governing their use" but noted that, if investigatory inquiries "were tantamount to ... interrogatories ... [,] such discovery would be subject to the limitation of reasonableness under the circumstances" and agreed with a disciplinary board's analysis that found some of disciplinary counsel's questions in the case before it were "overly broad" when they asked a respondent " 'to explain in detail' his conduct or to do so in light of the disciplinary rules[.]" *Id.* at 101–02. As in the instant case, the court in *In re Artis* found other questions improper because they were "overly broad, vague, burdensome and called for legal conclusions[.]" *Id.* Moreover, in *Attor-*

6. Specifically, HRPC Rule 8.4(d) states:
**Rule 8.4. MISCONDUCT.**
   It is professional misconduct for a lawyer to:
   . . . .

**(d)** fail to cooperate during the course of an ethics investigation or disciplinary proceedings.
(Bold emphases in original.)

*ney Grievance Commission of Maryland v. Ward*, 394 Md. 1, 904 A.2d 477 (2006), the Maryland Court of Appeals, in ruling upon Bar Counsel's exceptions to the hearing judge's findings and conclusions, found that a hearing judge did not abuse her discretion when she concluded that Bar Counsel was "seeking to go on a fishing expedition" and, therefore, refused discovery of financial records.

Taken in toto, Sunderland's investigation of the grievances submitted by Breiner's clients, as exhibited by the uncontested written communications in the record of this action, was overbroad, uncivil, and abusive.

The processes for reviewing reports and recommendations for discipline under DB Rule 3 and RSCH Rule 2.7 provided Breiner no remedy for curbing Sunderland's abusive investigatory tactics and overreaching discovery practices. Neither the Disciplinary Board Rules nor the RSCH provide processes or procedures for addressing issues of abusive investigatory tactics and overreaching discovery practices. Inasmuch as Breiner has been left with no mechanism by which to seek a remedy for the abusive investigatory or discovery tactics employed in this case, review by way of the subject petition is appropriate.

Sunderland's investigatory practices, as demonstrated by Breiner, reflect poorly on the integrity of the disciplinary process created by this court. Although in *In re Disciplinary Board*, 91 Hawai'i at 370, 984 P.2d at 695, we found nothing "to indicate [the] ODC . . . [had] abused the discretion granted by this court or . . . [had] breached any duty owed to this court," Breiner's case is clearly distinguishable. The information provided in this proceeding unquestionably shows a breach of the ODC's duty to investigate and prosecute fairly and an abuse by ODC of the broad discretion granted by this court.

Under these circumstances, we grant Breiner's petition and order that Disciplinary Counsel shall:

(1) forthwith remove Sunderland from further participation in any investigation involving Breiner;

(2) no later than thirty days after the date of this opinion, assign other assistant disciplinary counsel (successor counsel) to review the files for ODC Case Nos. 6889 and 8117. Successor counsel shall complete the review and make a recommendation, in accordance with RSCH 2.7(a), no later than thirty days after his or her assignment. The reviewing Board member shall act upon successor counsel's recommendation within thirty days after it is received. If formal proceedings, including any recommendation to this court, are instituted, they shall be conducted and completed no later than six months from the date of this opinion; and if (a) successor counsel's recommendation is not made and acted upon within the time provided herein and (b) formal proceedings, including any recommendation to this court, are not conducted and completed within six months from the date of this opinion, ODC Case Nos. 6889 and 8117 shall be dismissed; and

(3) in light of this opinion and within a reasonable time after the date of this opinion, review the propriety or appropriateness of Sunderland's claims for compensation with regard to the investigations of ODC Case Nos. 6889 and 8117.

We further order that, within 180 days after the date of this opinion, the Disciplinary Board shall propose to this court Disciplinary Board and/or Supreme Court rules concerning (1) the scope of disciplinary investigations, including, but not limited to, subject matters that may permissibly be investigated or discovered in relation to a complaint or grievance and (2) the means by which an attorney who is the subject of a disciplinary investigation or proceeding may seek protective orders from the Disciplinary Board and this court.